JOHN SHAW V. MARTIN TRUNSLER.

Where the suit was upon a note payable in gold three months after the ratification of peace between the Confederate and the United States of America, and the plaintiff charged that he was deceived by the defendant who wrote the note, and the real understanding was, that the note should be paid three months after a settlement or termination, in any manner, of the difficulty then existing between the Government of the United States and the so-called Confederate States of America, which allegation the defendant denied, and alleged that the contract was as expressed, and there was no other proof as to the intention of the parties than the note itself, the instrument was construed according to its own tenor.

Even if the instrument should be construed to establish no legal right, yet as the answer of the defendant seemed to admit an equity, the court will not disturb it.

Where the plaintiff plead in abatement to an attachment bond, alleging that the securities were insolvent, whereupon the defendant moved to substitute other sureties, on the ground that he wished to use the original bondsmen as witnesses, upon which motion the court allowed a new bond to be filed, the action was a legal exercise of judicial discretion. (Paschal's Dig., Arts. 147, 1502, Notes 261, 590.)

The new bond having been properly filed, it related back to the date of the original, and thus preceded the attachment, and overruled the plea in abatement for want of a proper bond.

Where the petition stated that the note was given for gold loaned to the maker, and that there was fraud on the part of the maker, in that he inserted a different time and condition of payment from that really intended, a demurrer to the petition was properly overruled.

Where the notes declared on were payable in specie, but there was no averment that the coin was worth more than the paper currency of the country or greenbacks, it was improper to admit evidence of such difference of value, to instruct the jury to find such difference, and to sustain a verdict and render a judgment upon it, which was in the alternative, for $800 specie or $1,200 paper currency.

Gold and silver coin sanctioned by the act of Congress of the United States is legal currency. Without such act it would have no value. So the value of "greenbacks" or "legal tenders" is fixed by Congress, and the one has no more standing in court than the other.

Congress has the power to coin money, regulate the value thereof, and of foreign coin. The power is not restricted to the precious metals. To coin is simply to give the stamp of the supreme government, in order to give it all the attributes of money. (Paschal's Dig., p. 7, Notes 41, 38; Paschal's Annot. Const., Notes 72, 97, 98, 99, 100, 155.)

ERROR from McLennan. The case was tried before Hon. THOMAS HARRISON, one of the district judges.

Trunsler sued Shaw on two notes, the first dated 28th March, 1864, due one day after date, for $50 "in specie;" the other dated November 18, 1863, and payable "three months after a ratification of peace between the Confederate and United States of America," for $600, in gold. (Copies are given in the opinion of the court.) The plaintiff averred that he had been deceived as to the tenor of the last note, as is also stated by the judge. A question arose as to the right to substitute an attachment bond, because of a motion to quash, on the ground of the insolvency of the sureties, and a motion by the plaintiff to substitute a new bond. There were various pleadings of the parties, the plaintiff averring that the $600 note was for gold loaned, and the defendant seeming to rest his defense upon the fact that the time for the payment had not arrived.

Under the instructions of the court, also sufficiently noticed by the judge, the jury found a verdict. for the amount of principal and interest in gold, or its equivalent in currency, being one-third more in dollars than the gold value. The defendant prosecuted error, and assigned for error the various rulings which are noticed in the opinion.

*Renick & McKinney*, for plaintiffs in error.

No brief for the defendant in error has been furnished to the *Reporter*.

LINDSAY, J.—The plaintiff in the district court, who is the defendant in error in this court, instituted his suit in that court against the plaintiff in error, John Shaw, upon the following instruments of writing:

"[$50.]                    WACO, TEXAS, *March* 28, 1864.

"One day after date I promise to pay Martin Trunsler, or order, the sum of $50, in specie, with ten per cent. interest from date until paid.          JOHN SHAW."

"[$600.]                    WACO, *November* 18, 1863.

"Three months after a ratification of peace between the Confederate and United States· of America, I promise to pay Martin Trunsler, or order, the sum of $600 in gold, with ten per cent. interest from date until paid.

"JOHN SHAW."

Both of these instruments were included in the same petition. The appellee, in his petition, charges, that the plaintiff in error practiced a fraud and an imposition upon him in the execution of the latter instrument, and that it is not drawn in accordance with the terms of the contract actually made at the time between the parties; that, being an illiterate man himself, and having great faith and confidence in the plaintiff in error, he intrusted the writing of the instrument to him, who did so write it and deliver it to him on the day it bears date; that the real contract was, that the

appellant was to pay him the money therein stipulated to be paid three months after a settlement, or termination in any manner, of the difficulty then existing between the Government of the United States and the so-called Confederate States of America; and he avers that he did not discover the difference between the real contract and the instrument sued on until a short time before the commencement of his suit. This allegation of fraud in the execution of the writing, the variance between the contract and the instrument sued on, is positively denied by the answer, and no proof was introduced on the trial to sustain the allegation. Upon such an issue, there can be no doubt the party plaintiff had the right to show, by proof, fraud in the execution of the writing, and to have the instrument reformed according to the facts. But that not having been done, the instrument is left to be construed by its own language, because, if there was no fraud in the execution, we are constrained to admit the language used by the parties, in reducing their agreement to writing, as expressing the consenting wills of both parties, which consenting wills are of the essence and a *sine qua non* of all contracts. But from the character of the pleading in the case we do not feel disposed, at this time, to determine the legal construction of the instrument. If the instrument itself even establishes no legal right, the answer of the defendant seems to admit an equity, which we are not inclined to frustrate. And as we shall have to reverse the case and remand it, we will notice the errors assigned, that in a reinvestigation in the district court they may not be repeated.

The first error assigned is, that the court erred in permitting a new attachment bond to be substituted for the one on which the attachment was issued against the property of the defendant, at the institution of the suit, upon the ground of the insolvency of the sureties. An affidavit of the defendant's attorney was filed, alleging the insolvency, and an abatement of the writ of attachment was sought.

The plaintiff's attorney then moved the court to discharge the sureties in the bond, and substitute a new bond, on the ground that he needed the testimony of the sureties on the trial of the cause. This motion prevailed, and a new bond was executed, and approved by the court. In this we think there was no error; for, whether a new bond was substituted because of the insolvency of the sureties in the original bond, or because of the necessity of using the obligors as witnesses, the rights of the defendant were equally guarantied and protected by the new bond thus executed. It is but the exercise of a sound discretion of the court to subserve the ends of justice, is not in violation of our statute law, and is a practice observed in all the States. And, if our opinion be correct in this conclusion, the second assignment of error, that the court erred in sustaining the motion of the plaintiff to strike out the defendant's plea in abatement, is untenable. When the new bond was substituted, it had relation back to the emanation of the writ, and the rights of the defendant could not thereby be prejudiced; and, if the judgment should be in favor of the defendant, he has his remedy in the new bond executed by these bondsmen, as he would have had against the original, for the wrongful suing out of the attachment.

The third and fourth assignments of error, to wit, the overruling the plea in abatement and the demurrer to the petition, are necessarily disposed of in the conclusions to which the court has arrived in the above reasoning, and we need give them no further notice, except to state that the demurrer, necessarily admitting the truth of the allegation in the petition, and there being an allegation of fraud in the execution of the instrument made in the petition, the demurrer, for that cause alone, should have been overruled.

We think, however, the fifth, sixth, and seventh assignments of error, to wit, the error in the charge of the court to the jury, in overruling the motion for a new trial, and

permitting the plaintiff to prove and recover the value of specie, instead of a judgment for dollars and cents, are properly and well taken. A new trial should have been granted for reasons which we will now proceed to point out.

There was no allegation, either in the petition or amended petition, of any disparity between the specie currency of the country and the paper currency; and yet the court permitted proof to be introduced to show a disparity. This is certainly a departure from a well-settled principle, that a party has no right to prove what he does not allege in his pleading. It has been repeated over and over again in Texas practice, that the *allegata* and the *probata* must correspond. The plaintiff does ask that he may have his pound of flesh—his payment in gold and silver coins; but he does not state the difference between them, nor how that difference exists in fact or in law. But in our view of the matter, such evidence would have been wholly inadmissible upon the trial if the allegation had been made. Gold and silver coin, so sanctioned by the act of Congress of the United States, is legal currency. Without such sanction, it has no more legal value than the wampum of the North American Indian. So, the legal value of the paper currency, popularly called "greenbacks" and "legal tenders," is fixed and established by Congress, and the one has no more standing in the courts of the country than the other. Congress has power to coin money, regulate the value thereof, and of foreign coin. The power is not restricted to coining what are called the precious metals. They may coin iron, or they have the power to coin any thing else, and fix its value as money. To coin, is simply to give the stamp of supreme governmental power to any subject—to give it all the attributes of money. With the policy of such governmental action the courts have nothing to do. The supreme power of this nation has, whether wisely or unwisely, it is not for us as a court to inquire, seen fit to make this coinage of paper into money, and to fix its value, and it

is an act of insubordination to legitimate authority to undertake to discriminate by judicial action as to the values of the currency fixed and established by that supreme governmental authority. Commercially, we know that a discrimination is made between paper and specie currency. We know, too, that the legal rate of interest is eight per cent., and conventionally it may extend to twelve per cent., and no more; yet in practice dealers in money exact twenty-five per cent., fifty per cent., and even seventy-five per cent. But this practice does not settle what constitutes usury in contemplation of law. Our province is not to adjudicate what are the practices of men, nor what ought to be the policy of the Government. Our duty is to determine what the law is, as declared by the constitutions, both state and federal, and by the enactments of each of these political organisms. The political power of the nation alone has the right to judge of the policy of the measures adopted in reference to the currency of the country, and to regulate its legislation in regard to it according to its own convictions of what is best calculated to promote the interests of its foreign as well as its domestic relations. These considerations are entirely beyond the scope of our duty.

In our view, then, the court erred in its charge to the jury, that "if they find for the plaintiff, they may find that the sum due be paid in specie, or its equivalent in legal-tender currency;" for which cause the judgment is reversed, and the cause remanded to the district court, and a new trial granted.

REVERSED AND REMANDED.