## D. F. KNIGHT v. J. B. McREYNOLDS AND OTHERS.

1. A note made in 1864 is not void because it was made payable "six months "after the ratification of a treaty of peace between the Confederate "States and the United States." The termination of the war was the real event which fixed the time at which such a note became payable, and the contract was not vitiated by the stipulation.

2. The holder of a promissory note purchased land, and in part payment therefor transferred the note to his vendor by indorsement in blank. *Held*, that by the indorsement the purchaser made the note his own obligation, and the vendor had a lien on the land to secure its amount, unless there was an agreement to the contrary.

ERROR from Williamson. Tried below before the Hon. W. E. Jones.

The note in question was for ten hundred and seventy dollars, specie, and was made in March, 1864, by A. B. Montgomery and A. M. Montgomery, to Burrell A. W. Whatley or bearer, payable as shown in the head-notes.

Dimmitt, to whom reference is made in the opinion, was one of the defendants, having purchased the land from McReynolds after the latter's purchase from Knight, and pending the suit.

The case was tried below before the district judge, a jury being waived; and the plaintiff's suit was dismissed.

*F. W. Chandler* and *J. B. Morris*, for the plaintiff in error, filed an elaborate and able brief.

*Terrell & Walker*, for the defendants in error, submitted the case upon an argument strongly contesting both the legality of the note and the existence of the lien. After the rendition of the opinion they asked a rehearing, filing an argument which presents their views in a clear and forcible manner, as follows:

The defendant Dimmitt respectfully asks a rehearing in this case, and he begs to direct attention to two points:

*First.* To the construction of the instrument declared on, and

*Second.* To Dimmitt's relation to the land in event the note be held valid.

Briefly, upon the first point, we again call attention to Chief Justice Morrill's opinion in 31 Texas, Thompson *v.* Houston, where, in commenting upon the terms "ratification of a treaty "of peace," the court declared that they knew of no such treaty, while they did take notice of the public laws, etc. This case, we think, does not, either directly or otherwise, hold that the phrase is synonymous with close of hostility.

We regret that (owing to the absence of the volume from the library) the court has been unable to examine the case of Schmidt *v.* Barker, in 17 Louisiana, in which was so thoroughly discussed the reasons for the invalidity of C. S. paper.

Upon this subject we call attention to a late case in 13 Florida Reports, page 567, Garlington *v.* Priest, remarking that by the Texas Constitution all acts in aid of the rebellion, legislative or otherwise, are declared void as in Florida.

We cite from the opinion (and the argument applies with equal force to the case at bar) :

" The act in question expressly recognizes the dismember-" ment of the United States, and the establishment of the Con-" federate States of America.   The war, then in its incipiency, " is therein recognized as a war between two nations, capable " of making treaties with each other.   The act holds out to the " debtor an inducement to aid in prolonging the war as a means " of obtaining an extension of credit or postponing the time of " payment.   It holds out to the creditor an inducement to labor " in aid of the success of an inchoate power in its war upon " the Goverument of the United States—in effect, the destruc-" tion of that government and the establishment of another in " its place, in order that the security may become valid and his " debt saved.   And although the one may have supposed him-" self to be beneficially interested in a prolongation of the con-" test by delaying the day of payment, and the other to hasten " the result, and thus a sort of antagonism may have existed " between the debtor and the creditor ; both were induced to " oppose the success, either immediate or remote, of the United " States Government, and the supremacy of the Constitution " of the United States as the national law."

And in answer to a suggestion, that the immediate parties before the court were not parties to the bond sued on, the opinion proceeds :   *   *   *   *   " However this might have " been, if the statutes were not liable to the denunciation of " its nullity, and had it provided a stay merely for a given " period, depending upon no such illegal contingency (as rati-" fication of the treaty of peace), no consideration can be coun-" tenanced which seeks to uphold a contract, which, in any re-" spect, contemplates the destruction of the national life or the " national integrity."   We urge attention to the entire case, as

explicit authority directly upon the point, that the note, payable six months after the "ratification of the treaty," is illegal.

So is the case of Schmidt v. Barker, 17 Louisiana.

II. We again call attention to the effect upon the vendor's lien, of Knight taking the promissory note of Kirk & Montgomery, in part payment for the land.

The indorsement rendered McReynolds liable as indorser; and judgment could be rendered against him for the money as indorser; but we insist the lien was abandoned.

As a general rule, the vendor's lien exists for the purchase-money.

To this rule may be and are exceptions.

It has been a matter of much discussion to determine what shall be considered a waiver of the vendor's lien.

Courts have reached different decisions upon the effect of the vendor taking additional security. The discussion in McReth v. Simmons, while learned, can scarcely be said to reach any conclusion as a principle.

The weight of authority in America has been against the existence of the lien, wherever other security has been taken by the vendor.

Such has been the rule in Texas. (See 24 Texas, page 194.)

If this court has determined to overrule the older cases in Texas (sanctioned by the approval of Kent & Story), would it not be more satisfactory to do so expressly, so that the profession may not be misled?

To show the contrast we quote from the opinion:

"We are clearly of the opinion that by the indorsement of "the note, in part payment for the land purchased, McReynolds "made the same his own obligation and promise to pay, and "without an express agreement to the contrary, that note "would be a lien upon the land in favor of the vendee."

Contrast this with the almost opposite rule given by Kent, 4 Kent, p. 153: "Taking the responsibility of a third person "for the purchase-money is taking security, and extinguishes the "lien."

Of Story, in Gilman *v.* Brown, 1 Mason, page 212.    \*    \*
It ought to be held "a complete waiver of the lien."    \*    \*
"On a careful examination of all the authorities I do not find
"a single case in which it has been held, if the vendor takes
"a personal collateral security, binding others as well as him-
"self (binding Kirk & Montgomery as well as McReynolds)
"(as, for instance, a bond or note with security or indorser, or a
"collateral security or indorser, or collateral security by way of
"pledge or mortgage), that under such circumstances a lien
"existed upon the land itself."    (See note 2 Story's Eq., Arti-
cle 1226.)

These authorities were cited and followed by Judge Bell in
the case cited above, Parker County *v.* Seawell, 24 Texas, page
292.

In Vol. I., Leading Cases in Eq., page 273, notes, American
rule is summed up that "the taking    \*    \*    \*    any nego-
"tiable note drawn by the vendee and indorsed by a third per-
"son, or drawn by a third person and indorsed by the vendee
"(citing Gilman *v.* Brown, 1 Mason, p. 192 ; Conover *v.* War-
"ren, 1 Gilman, p. 428; Campbell *v.* Wilson, 2 Humph., p.
"248; Marshall *v.* Christmas, 3 Humph., p. 616 ; Bank *v.* Gray,
"6 How., Miss., p. 527 ; Foster *v.* Trustees, etc., 3 Ala., p.
"302), will repel the lien presumptively."    (See also 44 Ill.,
130 ;. 15 Ohio 35 ; 20 Ohio, 543 ; 14 Ohio, 428.)

OGDEN, J.    The most material question presented in this
record for adjudication, is in regard to the legality or illegality
of the note sued on ; and the only clause in the note which is
claimed to be illegal is that which prescribes the time of pay-
ment, and which is "six months after the ratification of a
"treaty of peace between the Confederate States and the
"United States."

The general rule in regard to the time specified in any
executory contract, for its execution or performance, is that
where the time is fixed, either absolutely, or by necessary rela-
tion to facts stated, so as to be either morally or physically certain,

that is sufficiently definite to support a contract. But where the time for the performance of a contract, or the payment of a note, is so indefinitely stated as to render the time intended uncertain, or where an impossible time is stated, the courts will not attempt to enforce such a contract, because of their inability to do so at all, or with any degree of certainty ; but it may be contended with much plausibility, that the simple statement of any time for the performance of a contract could not be considered *malum in se*, or in any manner criminal, so as to vitiate that contract on account of its illegality.

But this particular question has on several occasions been the subject of consideration by this and other courts, so that we can hardly look upon it as still an open question. In the case of Gaines *v.* Dorsett, 18 La., 563, Judge Talliferro, in announcing the opinion of the court, said : " We conclude " that the parties meant, by the term fixed for the payment, " the termination of the war     *     *     *     We cannot infer " that the obligation is null on the ground that it is *contra* " *bonos mores*, because the contracting parties thought proper " to fix the time of payment one day after the treaty of peace." In Shaw *v.* Trunsler, 30 Texas, 390, Thompson *v.* Houston, 31 Texas, 610, and in Scott *v.* Atchinson, decided at the last term, the same question arose, and in each case this court, either directly or indirectly, held the same doctrine announced in 18 La. An. Reports ; and therefore we simply announce what we believe a settled question, in saying that the time as stated in the note sued on for the payment of the same had direct reference to the close of the then existing war, and did not vitiate the note, and especially, as was said in Shaw *v.* Trunsler, " if " the instrument itself even established no legal right, the " answer óf the defendant seems to admit an equity we are " not inclined to frustrate."

The appellee admits the purchase of the land, and that the note sued on was transferred by him in part payment of the purchase-money, and in equity he has no right to hold the property purchased and refuse to pay the purchase-money.

14

We are clearly of the opinion that, by the indorsement of the note in part payment for the land purchased, McReynolds made the same his own obligation and promise to pay ; and without an express agreement to the contrary, that note would be a lien upon the land in favor of the vendor. And this appears to have been the view taken of the matter by McReynolds himself, for it is in testimony that, long after the purchase, he told several persons that the land was not fully paid for, and that this note was outstanding against it ; and from these facts, we think, there can be no doubt that the note is a lien upon the land in full force. And as Dimmitt purchased *pendente lite*, and with full knowledge of the lien upon the land, he must be held as taking subject to that lien.

This suit was instituted more than six months after actual hostilities, between the contending parties in the late war, had ceased; and if we construe the cessation of hostilities as the actual termination of the war, then, under the authorities referred to, the note by its terms was fully due when suit was commenced, and the defendant's demurrer on that ground should have been overruled. We discover no error in the rulings of the District Court upon the admission or rejection of evidence which, in view of this opinion, could affect the merits of the case; and as a jury was waived, and the cause submitted to the court upon the law and the facts of the case, the judgment of the District Court is hereby reversed, and this court, proceeding to enter such judgment as should have been rendered in the lower court, the clerk of this court is directed to enter up a judgment in favor of the appellant, and plaintiff below, for the full amount of the note sued on, and a decree foreclosing the vendor's lien on the land described in plaintiff's petition, and for costs, etc.

Reversed and rendered.