**SINGER SEWING MACH. CO. v. KALT-WASSER. (No. 8389.)**

(Court of Civil Appeals of Texas. Galveston. June 28, 1923. On Rehearing, Oct. 8, 1923.)

1. **Principal and agent ⊙⇒41—Recovery of fees which might have been earned held unauthorized, where discharge not wrongful.**

Where a contract of agency for the sale of sewing machines and collection of accounts provided that it might be terminated at the pleasure of either party, it was error to allow the agent to recover on a cross-bill fees which he might have collected, if he had not been discharged; the discharge not being wrong.

2. **Limitation of actions ⊙⇒28(1)—Where exclusive sales agency contract was verbal, no recovery of commissions on sales made by others prior to two years before suit.**

Where defendant was sued on open account after the termination of a contract of agency for the sale of sewing machines and collection of accounts, and the defendant by cross-bill claimed commissions on sales made by oth-

ers in territory claimed by him under a verbal exclusive agency contract, it was error not to sustain a plea of limitations to so much of the claim for commissions as was based on sales made more than two years before suit.

3. **Principal and agent ⊙⇒23(5) — Finding of agency for certain county held not sustained by evidence.**

In an action on open account, brought under a contract of agency for the sale of sewing machines and collection of accounts, wherein defendant by cross-bill sought to recover commissions on sales made by others in territory claimed by him as exclusive, evidence held insufficient to support a finding that defendant had been given the exclusive agency for such territory.

4. **Evidence ⊙⇒129(6)—Testimony as to terms of agency subsequent to that on which suit based held immaterial.**

In a suit on open account, brought under a contract of agency for the sale of sewing machines and collection of accounts, wherein defendant by cross-bill claimed certain commissions based on exclusive agency in a certain county, evidence that, after defendant had been discharged, plaintiff employed another agent and gave him the exclusive agency for such county, was immaterial and irrelevant.

Appeal from Burleson County Court; T. J. Carter, Judge.

Action by the Singer Sewing Machine Company against C. F. Kaltwasser, with cross-bill by defendant. Judgment for defendant on his cross-bill and plaintiff appeals. Affirmed in part, reversed in part, and remanded.

A. B. Gerland, of Caldwell, for appellant.
Bowers & Bowers, of Caldwell, for appellee.

LANE, J. This suit was instituted by the Singer Sewing Machine Company, hereinafter called plaintiff or appellant, in the county court of Burleson county, Tex., on the 6th day of September, 1921, against C. F. Kaltwasser, hereinafter called defendant or appellee, to recover a balance of $84.12 due upon a certain note for the sum of $110 executed and delivered by the defendant to plaintiff; to recover upon two open accounts, for $12.14 and $35.39, respectively; to recover title and possession of seven sewing machines, of the alleged value of $642, and two receipt books, of the alleged value of $50 each. Plaintiff prayed that, in the event the machines and receipt books could not be found, it should be permitted to recover their value. It also prayed for a foreclosure of a certain mortgage. It is shown, however, that four of the sewing machines sued for, and one of the receipt books, were returned to the plaintiff under its sequestration proceedings, and therefore no further mention of these items will be made herein.

On the 9th day of November, 1921, the de-

fendant filed his original answer, denying generally all allegations of the plaintiff's petition, except such as might be specially admitted in said answer. He admitted in said answer that he owed the plaintiff the following sums: The two open accounts declared upon by plaintiff, aggregating $47.53; the value of two sewing machines, one of the value of $38.40 and the other $30.40—all items of the aggregate sum of $116.33. He alleged that he executed to plaintiff a note for the sum of $100, and that, after he had so executed and delivered the same, plaintiff changed the same so as to make it read for $110, and to appear as being signed by a witness, whose name did not appear on the original note when the same was delivered. He alleged that the note was obtained in fraud, and for the reason stated he resisted payment of the balance alleged to be due thereon.

After making the foregoing answer to the suit of the plaintiff, defendant set up his cross-bill, and alleged that plaintiff was indebted to him in the sum of $458.98 for commissions on sales of machines and collections made by him personally in Burleson county, Tex., for the plaintiff under his contract of agency, and that paintiff was further indebted to him in the sum of $500, which he would have earned under his contract of agency, had the plaintiff not wrongfully discharged him. He prayed for judgment for $958.98, the aggregate of the two sums mentioned, less the sum of $116.33, which he admitted he owed plaintiff, a net balance of $842.65.

On the 3d day of May, 1922, defendant filed his third amended answer, upon which he went to trial. In this answer he repeats his general denial made in his original answer, and admits that he owes the plaintiff $116.65, as in his original answer, and he repeats his allegations relative to the $110 note sued upon. Pleading his counterclaim, he alleged that the sum of $454.84 is due him from the plaintiff, by reason of his agency contract with it to sell sewing machines and parts in Burleson county, Tex., which were made by him in person; said contract having been made on or about the 1st day of March, 1918, and was in writing and renewed from year to year, and was renewed last on March 1, 1921, and was in full force and effect for the whole county of Burleson, state of Texas, up to the 1st day of July, 1921, when, on that date, appellant, without any fault of his, discharged him, and failed and refused to allow him to collect for the machines he had personally sold in said Burleson county, Tex., and upon which he had selling commissions of 25 per cent. upon each machine, also a commission of 20 per cent. on the balance as collection commissions, and 75 per cent. of the old machines or the cash allowed for old machines; that upon said commissions and fees the appellant is justly indebted to him in said sum of $454.84. And in this third amended answer

he alleged, for the first time, that one Satterwhite had, by the consent of the plaintiff, sold 18 machines on the Chance plantation in Burleson county, Tex., for the sum of $1,200, and that under his contract he was entitled to a sales commission of 25 per cent. of such sales, amounting to $305.50, and to $86.10 for some other service not clearly alleged. He alleged, however, that, while the plaintiff was justly indebted to him for the whole of the $391.60, the aggregate of the two sums last mentioned, he sues for the sales commission of $305.50 only, and in effect refuses to sue for the $86.10 alleged to be due for some service not specifically mentioned; it being stated in said answer, however, that the claims had not been placed in his hands for collection. And for the first time he alleged that the plaintiff was also indebted to him under his contract for the further sum of $238.66 as his 25 per cent. sales commission upon sales of machines made by one W. R. Caldwell in the town of Somerville, in Burleson county, Tex., making a total sum sued for of $999.99, less the sum of $116.33, which he admits he owes plaintiff.

On May 3, 1922, the plaintiff filed its supplemental petition, and therein demurred generally and specially to the cross-bill of defendant. It specially pleaded that said cross-bill was in excess of the jurisdiction of the county court and prayed that the same be stricken out. Plaintiff also pleaded the two-year statute of limitation in bar of the items claimed by defendant as commissions on sales made by Satterwhite and Caldwell, and says that it appears from the answer of defendant that all the sales made by Satterwhite and Caldwell were made before the 3d day of May, 1920, and more than two years prior to the filing of the defendant's cross-bill setting up said items on the 3d day of May, 1922.

However, specially pleading limitation in bar of the commissions claimed by defendant from sales made by Satterwhite, plaintiff alleges that of such commissions $252.80 only was so barred. It was shown that those parts of the written agency contract between the plaintiff and defendant, of date May 30, 1916, pertinent to the matters in controversy are as follows:

"First. In consideration of the company taking the employed into its service on the undermentioned terms the employed agrees:

"A. To act as salesman and collector of the company, to give such a guaranty or security as shall be satisfactory to it for the faithful performance of the terms of this agreement, and to devote his entire time and attention exclusively to collecting such accounts as may be intrusted to him by the company and to selling and leasing sewing machines and supplies, belonging to the company and furnished to the employed by it for said purposes and none other, and in all other respects faithfully to carry out the terms and conditions of this agreement. * * *

"Second. The company agrees to pay to the employed weekly in full for all services rendered and expenses incurred the following remuneration, subject to the limitations hereinafter expressed:

\*    \*    \*    \*    \*    \*    \*

"B. A remitting compensation equal in amount to twenty per cent., to be computed on the difference between the cash received by the employed on sales and collection and the total selling compensation paid to him each week. \* \* \*

"Eighth. · \* \* \* Accounts in hands for collection may be withdrawn at any time at the option of the company, or collections may be made thereon by other collectors if deemed advisable. Should the company desire to know the location of any machine or accounts intrusted to the employed, he shall promptly locate the same to the satisfaction of the company's agent or managing salesman without expense to the company, and in default of his so doing he thereby authorizes the company to apply to the expense of locating the same any compensation which is or may become due to him and any moneys standing to his credit. \* \* \*

"Twelfth. This agreement shall remain in full force unless superseded by a new one in writing duly executed, and until such time no change or modification of its terms shall be valid or binding. This agreement may be terminated at the pleasure of either party."

The territory in which defendant was to act as agent is not mentioned in the contract. It is shown that the company discharged defendant and terminated the contract on the 1st day of May, 1921.

Defendant testified that, some time after the written contract was signed, he and W. R. Caldwell, district agent for the plaintiff, went to Harry Griffin's place and had Griffin to witness a verbal agreement that he (defendant) should have all of Burleson county, Tex., in which to sell and lease machines for the plaintiff and to work for the plaintiff. He testified further as follows:

"I had a contract with the plaintiff, the Singer Sewing Machine Company, for all of Burleson county, Tex., not a part of the county excepted. I worked on the Chance plantation for 1½ years. They sent me some collections for that place. Caldwell had been down there one day, and Chance put him off his place, and then Caldwell called for me to not work the Chance place any more, and I did not work it any longer. He told me that Wright had told him that Chance did not want any one on the place except Satterwhite, who works out of Brazos county. I told Caldwell all of the time that I was claiming all the commissions earned by Satterwhite on the Chance place and those made by Caldwell in Somerville."

Harry Griffin testified:

"W. R. Caldwell, agent of the Singer Sewing Machine Company, and C. F. Kaltwasser, came into my office and had me be a witness to the fact that C. F. Kaltwasser, as agent of the Singer Sewing Machine Company, should have all of Burleson county, Tex., to work for the company as salesman and collector, and no part of the county was excepted. There in my office at Deanville is where this took place."

W. R. Caldwell testified as follows:

"No one was present when the contract between Kaltwasser and the Singer Sewing Machine Company was made. It was agreed that Kaltwasser should have Burleson county, with the exception of Somerville. Somerville has always been reserved for the shopman at Brenham, and it was further agreed that the Brazos bottom should be neutral territory for both the Bryan agent and the Caldwell agent. Since the Brazos bottom trade practically all goes to Bryan, then this territory was to be neutral. Kaltwasser never did ask me to work Somerville, or for the right to work it himself. He had been working in the Brazos bottom on the Chance place some, when Mr. Chance ordered us from his place and told me that he did not want any of our agents on that place any more. He was abrupt about it. So far as I was concerned, Kaltwasser could have worked the Chance place all he wanted to. I had no control for the company over the Chance place."

It was shown by the exhibit pleaded by defendant and by the undisputed evidence that 14 of the 18 machines sold by Satterwhite in Burleson county, the sales price of which aggregated $879, were so sold between the 1st day of October, 1918, and the 9th day of March, 1919; that all of the 14 were sold more than two years before the defendant began his suit for commissions on the sales price of same, to wit, May 3, 1922; and that, if he was entitled to commissions on such sales it would amount to $244.75.

The court overruled the plaintiff's general demurrer, its plea to the jurisdiction of the court over defendant's cross-bill, and all special exceptions, and submitted the cause to a jury upon special issues, which issues and answers of the jury thereto were substantially as follows:

"(1) Was the note in controversy altered and raised from $100 to $110 by any one after defendant signed the same?" The jury answered, "No."

"(2) What amount was due the Singer Sewing Machine Company by defendant on the machine claimed to be sold to Harry Griffin?" Answer: "$44.58."

"(3) What amount, if any, is defendant entitled to as commissions on machines sold by him in Burleson county?" Answer: "$100."

"(4) What amount, if any, is due the defendant by the company as commissions on machines sold in Burleson county by Mr. Satterwhite?" Answer: "$250."

"(5) What amount, if any, is due the defendant by plaintiff as commissions on machines sold in Somerville by Mr. Caldwell?" Answer: "$200."

In · connection with the special issues the court instructed the jury substantially that the contract between the plaintiff and defendant authorized and empowered defendant to sell machines, etc., on time, and by its terms defendant was to receive as compensation for his services as agent a commission on all

sales and collections made by him, and therefore, if the defendant was discharged by plaintiff after he had made a number of sales on time, and the uncollected accounts due for such sales were taken out of the hands of defendant at the time of his discharge, thus preventing him from collecting same, then defendant would be entitled to his collection fees on said uncollected accounts.

Judgment was rendered in favor of the defendant against the plaintiff for the sum of $312.01. The pertinent parts of said judgment are as follows:

"And the defendant, C. F. Kaltwasser, having in due time filed his motion in this court, requesting and praying the court to order a judgment in this cause in favor of the plaintiff, Singer Sewing Machine Company, for the sum of' $237.99, being represented by the following amounts, to wit: The defendant, C. F. Kaltwasser, having acknowledged upon the trial of said cause that he was justly indebted to the plaintiff in the sum of $109.29, which was agreed upon by the plaintiff and defendant and was not submitted to the jury, and the jury having answered special issue No. 1 in the negative, resulted in the sum of $84.12 against the defendant in favor of plaintiff, and the jury having answered special issue No. 2 that defendant was justly indebted to plaintiff in sum of $44.58, for the sewing machine defendant sold to Harry Griffin, all of said items being in favor of plaintiff, the Singer Sewing Machine Company, and against the defendant, C. F. Kaltwasser, and making a total sum of $237.99, which by agreement and by verdict of the jury should be adjudged in favor of plaintiff, the Singer Sewing Machine Company against defendant C. F. Kaltwasser; and in said motion the defendant C. F. Kaltwasser, requested and prayed that this court render a judgment in this cause in his favor against the plaintiff, the Singer Sewing Machine Company, upon his counterclaim, as answered by said jury in special issues Nos. 3, 4, and 5 as above shown for the sum of $550, the answers to said special issues Nos. 3, 4, and 5 above being in his favor for said amount, and defendant having further requested and prayed in said motion, and also in his pleading prayed, that whatever amount of damages the plaintiff, Singer Sewing Machine Company, should recover against him, be allowed and subtracted and offset as against whatever judgment for damages the defendant, C. F. Kaltwasser, should obtain against said plaintiff, the Singer Sewing Machine Company, and that the defendant, C. F. Kaltwasser, have judgment against the plaintiff, the Singer Sewing Machine Company, for the difference and for all costs of suit, and the defendant moves the court that said sum of $237.99 in favor of plaintiff be taken from said sum of $550 in favor of defendant, and that judgment be rendered herein for defendant, C. F. Kaltwasser, for the sum of $312.01, with interest thereon from date at the rate of 6 per cent. per annum, and all costs of suit, and that he have his execution.

"Defendant further prays in said motion that no judgment of foreclosure of mortgage and sequestration lien be awarded the plaintiff on the personal property described in the plaintiff's petition, for the reason that the plaintiff's judgment for damages as against defendant, when set off and subtracted therefrom, gives a judgment in favor of defendant as against plaintiff, and that in the final adjustment of said judgment the defendant, C. F. Kaltwasser, recover of and from plaintiff, the Singer Sewing Machine Company, the sum of $312.01, with interest and costs, and plaintiff take nothing by its suit.

"And the court, having considered said verdict of the jury and their answers to the special issues aforesaid, the agreements of both parties to this suit, the pleadings of both parties, and the motion of defendant to enter judgment, is of opinion that judgment herein should be entered as prayed for in said motion.

"It is therefore ordered, adjudged, and decreed by the court that the plaintiff, the Singer Sewing Machine Company, do have and recover of the defendant, C. F. Kaltwasser, the sum of $237.99, but that the same be set off and allowed as a credit on the judgment hereinafter rendered in favor of the said defendant, C. F. Kaltwasser. It is therefore ordered, adjudged, and decreed by the court that the defendant, C. F. Kaltwasser, do have and recover of and from the plaintiff, the Singer Sewing Machine Company, the sum of $550, but that the judgment for $237.99 hereinbefore rendered in favor of plaintiff, the Singer Sewing Machine Company, against said defendant, C. F. Kaltwasser, be offset and allowed and subtracted therefrom, leaving a judgment in favor of defendant against plaintiff, Singer Sewing Machine Company, in sum of $312.01; and it is so ordered and adjudged.

"It is further ordered, adjudged, and decreed that no foreclosure of mortgage or sequestration lien be allowed the plaintiff as against defendant, because no final judgment in any sum is given plaintiff, Singer Sewing Machine Company, as against defendant, C. F. Kaltwasser. It is therefore adjudged and decreed and ordered that the defendant, C. F. Kaltwasser, do have and recover of and from the plaintiff, the Singer Sewing Machine Company, the sum of three hundred and twelve and 1/100 ($312.01) dollars, with interest thereon from date of this judgment at the rate of 6 per cent. per annum, together with all costs of suit, and that execution issue."

From the judgment so rendered the Singer Sewing Machine Company has appealed.

We do not agree with the contention of appellant that the court erred in permitting appellee, by his third amended answer, to reduce the amount of his cross-bill as set up in his second amended answer. We are not prepared to hold that such reduction was made fraudulently, so as to bring the amount sued for within the jurisdiction of the court. The amount sued for in the cross-bill, as set up in the third amended answer, was, we think, within the jurisdiction of the county court.

[1] We sustain appellant's contention that appellee was not entitled to the sum of $329 claimed by him as collection fees; said claim being based upon appellee's contention that he was wrongfully discharged, and that, if he had been permitted to collect certain

amounts due by purchasers to whom he had made sales, he would have earned said sum of $329. By the contract between the parties it was specially provided that the contract might be terminated at any time by either party, and it was also provided thereby that appellant might withdraw from appellee any accounts in his hands and turn them over to other agents for collection. We think, therefore, as contended by appellant, that the court erred in submitting to the jury the question as to whether appellee was entitled to such fees.

[2] We also agree with appellant that the court erred in not sustaining appellant's plea of limitation to so much of the claim of appellees for commissions upon the sales made by Satterwhite as was shown by appellee's cross-bill to have accrued, if at all, more than two years before suit was brought therefor. Appellee was not, by the terms of the written contract between the parties, given the exclusive agency for Burleson county; but it is shown by the undisputed evidence that, if he had any such exclusive agency, it was by virtue of a verbal agreement made between the parties some time after the written contract was executed. By the written contract it is provided that all commissions earned by appellee were to be payable weekly; therefor, from the facts shown and pleaded by appellee, it is apparent that so much of appellee's said claim as accrued under said verbal agreement more than two years before suit was brought for its recovery was barred by the two-year statute of limitation pleaded by appellant, and that the court erred in not so holding.

[3] We also agree with the contention of appellant that there was no evidence to support a finding that appellee had by the written contract, or by the verbal agreement testified to by him and his witness Griffin, been given the exclusive agency of Burleson county. There is no basis for a contending that any such exclusive agency was given him by the written contract. Nor is there any evidence upon which a finding that there was a verbal agreement giving him such exclusive agency could be based. The testimony of appellee and his witness Griffin was in effect that by said verbal agreement appellee was given the whole of Burleson county in which to work; but neither of these witnesses, nor any other witness, testified that other agents were to be excluded from working in said county for appellant. Under the facts as they come to this court, appellee would not be entitled to recover any commissions upon the sales made by either Satterwhite or W. R. Caldwell.

[4] We sustain the contention of appellant that the court erred in permitting W. R. Caldwell to testify on cross-examination, that after appellee had been discharged and his contract terminated, appellant employed another agent and gave him the exclusive agency for Burleson county. Such testimony was immaterial and irrelevant, and had no tendency to prove that appellee had been given such exclusive agency under his contract with appellant.

For the reasons pointed out, the judgment is reversed, and the cause remanded.

Reversed and remanded.

### On Motion for Rehearing.

By its motion for rehearing appellant asks that we so modify the judgment heretofore rendered by this court as to affirm so much of the judgment of the trial court as was in its favor for $237.99, and to reverse only so much thereof as relates to the cross-bill of appellee, Kaltwasser. We are of opinion that said motion should be granted to the extent hereinafter indicated.

The trial court is hereby instructed upon another hearing of this cause to allow appellant judgment for said sum of $237.99, subject, however, to be offset by any sum that may be adjudged to appellee, Kaltwasser, upon his cross-bill, and that if, after deducting said offset, there shall remain any balance due appellant, then and in that event only, appellant's mortgage lien alleged and proven shall be by said court foreclosed for the collection of said balance.