## DALE v. STEVENS.
### No. 7997.

Court of Civil Appeals of Texas. Austin.
Sept. 26, 1934.

Frank C. Dickey and Paul Petty, both of Ballinger, for appellant.

A. O. Strother, of Winters, and Harris, Harris & Sedberry, of San Angelo, for appellee.

McCLENDON, Chief Justice.

Stevens sued Dale as guarantor, and Wright and wife as makers, upon a promissory note; and to foreclose a deed of trust covering a lot in Winters securing said note; and to fore-

close an alleged equitable vendor's lien upon real estate which had been conveyed by Stevens to Dale, in the purchase of which Dale had transferred to Stevens the note in suit as part of the purchase price.

The only fact question in the case was whether the words "without recourse," immediately above Dale's signature indorsing the note, had been stricken out at the time of delivery of the note to Stevens. This controversy was submitted to the jury in the form of a single special issue, and was answered in the affirmative; that is, that the alteration was made at the time of delivery. Upon this finding judgment was rendered in favor of Stevens against Wright and wife (they having confessed judgment) and Dale for the amount of the note, with foreclosure of the trust deed lien, and against Dale foreclosing the asserted equitable vendor's lien. Dale has appealed.

There are quite a number of assignments of error and propositions predicated upon exceptions to the pleadings and variance between the pleadings and proof.

We have carefully studied all of these assignments and propositions in the light of the complete record, and find that none of them has any substantial merit. We do not feel that they are of sufficient importance to warrant discussion in a written opinion.

█ The note in suit was upon a printed form, on the back of which was a printed form of indorsement. A photostatic copy of this indorsement is contained in the statement of facts, which reads:

"No. ——

"INSTALLMENT DEED OF TRUST NOTE
"For Value Received
"I hereby sell, transfer and assign to

~~W. M. Stevens~~
William Stevens

the within note, together with the Deed of Trust lien on the property securing same, and as endorser, I guarantee the payment of the within Note at maturity, or on demand at any time after maturity, waiving demand, protest and notice of non-payment thereof:

~~without recourse~~
"M. C. Dale."

The underscoring is ours, to indicate those portions of the indorsement which were not printed. The only witnesses to the transaction were Stevens and Dale, whose testimony is diametrically opposite on this issue. In substance, Stevens testified that his agreement with Dale with reference to sale of the property was that Dale was to guarantee payment of the note, but that when Dale tendered

the note to Stevens the words "without recourse" appeared above Dale's signature, and Stevens declined to accept the note as tendered; whereupon Dale scratched out the words "without recourse." The change of "W. M. Stevens" to "William Stevens," which was done in typewriting, was in order to correct an error in Stevens' name. Dale, on the other hand, testified that there was no previous agreement that he was to guarantee the note; and that when he tendered it to Stevens and Stevens accepted it, the words "without recourse" had not been stricken out, and such change had been made without his knowledge or consent subsequently to indorsement of the note to Stevens. Stevens' attorney in his argument to the jury stated: "The evidence shows that the plaintiff was taking this note secured by property of less than its value. Now, does it look reasonable to you that he would take it endorsed 'without recourse.'"

This argument was objected to and requested-excluded from consideration of the jury and they directed not to consider it, upon the ground, among others, that "it was without the record, and was a comment by counsel upon testimony that had been excluded from the jury, and the consideration of which by the jury had been by the court forbidden." This objection was overruled, and the court declined to withdraw the argument from the jury, or to instruct the jury not to consider it.

We have examined the entire statement of facts, all of the pertinent portions of which follow:

In his cross-examination, Stevens, in his answer to a question by Dale's attorney requesting him to give the details of the land deal between Stevens and Dale, stated, with reference to Stevens taking the note as part consideration of the land, "I told him it was not worth it." Dale's attorney objected to that portion of the answer, "as to what the property was worth," which objection the court sustained. Later, on redirect examination, the following occurred (Mr. Dickey was attorney for Dale):

"A. I objected to that, that was not my understanding, and I would not accept it at all. He did not have the security on the property.

"Mr. Dickey: We object as to the security.

"Q. Did you know anything about the value of this particular lot at that time?

"Mr. Dickey: We object.

"The Court: I overrule the objection.

"Q. I am asking you about the value of this lot?

"Mr. Dickey: I object as leading.

"A. I did not consider it worth a thousand dollars.

"Mr. Dickey: We object as to what he considered it worth.

"The Court: I sustain the objection, and the jury are instructed not to consider the answer of the witness.

"Q. Did you know the value of this lot and other lots in the city of Winters at that particular time? A. No, I don't know it."

There is nothing in the statement of facts, other than the above, which has any bearing whatever upon the value of the property covered by the deed of trust securing the note in suit.

Stevens contends that there was no ruling upon his above evidence, "he did not have the security on the property," and that this was sufficient warrant for the argument. In this we do not concur. While there was no immediate ruling of the court, the objection was immediately followed by an attempt on the part of Stevens' counsel to qualify him as an expert witness upon the subject of value, which he was unable to do; and the court excluded his statement in this connection that he did not consider the property worth $1,000. In answer to the question as to whether he knew the value of this and other lots in the city of Winters at that particular time, he answered, "No, I don't know it."

We think it can hardly be fairly questioned that the effect of the court's ruling was to exclude all testimony of Stevens regarding the value of the security. The last question asked by Stevens' attorney upon this question was as to his knowledge of such value, followed by his answer that he did not know. The record does not note any exception by Stevens to this action of the court; and the only reasonable interpretation which can be put upon the record is that his attorney abandoned the inquiry when his client failed to qualify as being competent to give evidence upon the subject.

It is unnecessary to cite authority upon the proposition that it is improper in argument to comment upon matters dehors the record. The value of the security for the note was an important circumstance in determining what motivated Stevens in declining, vel non, to accept Dale's indorsement without recourse. The evidence, as stated, was sharply conflicting upon this sole and controlling fact issue in the case, and belief on the part of the jury that the security was inadequate was reason-ably calculated to have a most important influence in the determination on their part of the conflicting evidence of the two parties to the suit who were most vitally interested in the determination of that issue. All of the proceedings regarding this evidence, as above set forth, were in the presence of the jury; and while they were instructed at the time the evidence was offered not to consider it, the positive assertion by Stevens' counsel in his argument that the property was not worth the amount of the note, and the action of the court in refusing to sustain the objection and to instruct the jury at that time not to consider the argument, was tantamount to a ruling by the court that the statement was warranted, and that it was a proper matter for the consideration of the jury.

We hold that the argument was improper as being without the record; that it was highly prejudicial and reasonably calculated to influence the jury in its decision; and therefore that it constituted reversible error.

■ There have been a number of recent decisions by the Commission of Appeals to the effect that any improper argument of counsel is presumed to be prejudicial, unless the record otherwise demonstrates that it could not be so. These decisions are based in the main upon the holding of the Supreme Court in Missouri, K. & T. Railway Co. v. Hannig, 91 Tex. 347, 43 S. W. 508, 509, to the effect that, "in order to hold that the error does not require a reversal of the judgment, it ought clearly to appear that no injury could have resulted from the admission of the evidence."

In the case of Golden v. Odiorne, 112 Tex. 544, 249 S. W. 822, it was held that rule 62-a, promulgated subsequently to the Hannig Case, modified the rule announced in that case to the extent of casting upon the appellant the burden of showing at least reasonable probability of prejudice. In support of this holding the case of Burrell Engineering & Const. Co. v. Grisier, 111 Tex. 477, 240 S. W. 899, was cited as being irreconcilable with the holding in the Hannig Case, unless it be assumed that the Burrell Case was predicated upon rule 62-a. The rule announced in Golden v. Odiorne, and the holding in Burrell v. Grisier, were applied in the case of D. & H. Truck Line v. Lavallee (Tex. Civ. App.) 7 S.W.(2d) 661, in which a writ of error was denied. This court has steadfastly held to the rule that reasonable probability of prejudice must appear in assigned errors of this character in order to require a reversal. Whether this statement of the rule conflicts with some of the recent opinions of the Commission of Ap-

peals in this regard is immaterial so far as this case is concerned. Under either statement of the rule, the argument before us must be held prejudicial. It is not possible to know what influence the improper argument actually had upon the jury's decision, and even under the rule in Golden. v. Odiorne, it is not required that the appellant demonstrate or affirmatively show that the improper argument or evidence in fact influenced the jury. All that is necessary is for it to appear that the improper argument was reasonably calculated to have such influence, which, unless it otherwise appears from the record, carries with it the presumption that it probably did have such influence.

This holding renders unnecessary discussion of another assignment of error predicated upon improper argument of an inflammatory nature. Upon another trial this character of argument should not be allowed. Whether alone it would constitute reversible error, we find it unnecessary to consider.

■ Dale offered to prove by Wright, maker of the note in suit, that some time during the afternoon of the day on which the transaction was closed (the transaction being closed at noon) Dale met Wright and told him that he had indorsed the note to Stevens without recourse. The testimony was offered upon the ground that it was part of the res gestæ. It was excluded. We approve this holding. The conversation was too far removed from the transaction at issue in point of time, and was therefore lacking in spontaneity, an essential element to constitute it a part of the res gestæ. See 17 Tex. Jur. p. 620, § 261, and authorities, particularly Emerson v. Mills, 83 Tex. 385, 18 S. W. 805.

■ Error is assigned upon the action of the trial court in decreeing and foreclosing an equitable vendor's lien upon the property conveyed by Stevens to Dale. We sustain this assignment. The deed from Stevens to Dale was introduced in evidence, but is not brought forward in the statement of facts or elsewhere in the record. There is, however, in the statement of facts a statement to the effect that the recited consideration was "$15000.00 to us paid." The general rule, which has been uniformly followed in this state (omitting the cases of Christian v. Austin, 36 Tex. 540, and Knight v. McReynolds, 37 Tex. 204, decided by the so called Semicolon Court), is thus stated in the case of Faver v. Robinson, 46 Tex. 204, below: "When the vendee 'takes a distinct and independent security, either of property or of the responsibility of third persons,' he will be considered to have waived the lien which equity infers from the sale on credit, unless it appears that he reposed as well upon the lien as upon such security."

The following, among other cases, support this doctrine: Parker County v. Sewell, 24 Tex. 238; Ellis v. Singletary, 45 Tex. 27; Faver v. Robinson, 46 Tex. 204; Flanagan v. Cushman, 48 Tex. 241; Cresap v. Manor, 63 Tex. 485; Dyson v. Dysart (Tex. Civ. App.) 250 S. W. 716.

In the Parker County Case, Associate Justice Bell reviewed the decisions, English and American, upon the subject.

The fact that the additional security constitutes a note made payable to the vendee and by him indorsed with recourse to the vendor does not vary the rule. Several of the cited decisions were cases of that sort. We see no distinction between the liability of a grantor and that of an indorser with recourse,. so far as concerns this particular question. In each instance the liability is only secondary to that of the principal debtor.

It is competent to show by other evidence that the intention was not to waive the equitable vendor's lien; but the fact of taking a separate or independent security is prima facie evidence of waiver, casting the burden upon the vendor of showing that such was not in fact the intention or agreement. There is nothing in the record tending to rebut this prima facie presumption of waiver. Luse v. Beard (Tex. Civ. App.) 252 S. W. 243; Hable v. Owens (Tex. Civ. App.) 287 S. W. 155; Chenowth v. Beckham (Tex. Civ. App.) 297 S. W. 863, cited by Stevens and not in point. The first and last of these cases hold that there is an implied warranty that notes indorsed by the vendee to the vendor as part consideration of the purchase price of real estate are valid; and where they prove to be invalid the law raises an equitable vendor's lien in favor of the vendor to secure them. The second case holds that where the vendee, as part of the purchase price of real estate, assumes the debt or other obligation of the vendor, the latter has a vendor's lien to secure the performance of such assumption. These holdings are well established, but have no bearing upon the question at issue.

Dale contends, and Stevens concedes, that the judgment is excessive in not allowing an admitted interest payment. This need not occur upon another trial.

The trial court's judgment is reversed, and the cause is remanded.

Reversed and remanded.