**WILLIAMS et al. v. TEXAS EMPLOYERS'
INS. ASS'N.**

No. 11892.

Court of Civil Appeals of Texas.
San Antonio.

Dec. 1, 1948.

Rehearing Denied Jan. 5, 1949.

I. M. Singer and McCampbell, Wood & Kirkham, all of Corpus Christi, for appellants.

Kemp, Lewright, Dyer & Sorrell, of Corpus Christi, and Lloyd & Lloyd, of Alice, for appellee Cook.

MURRAY, Justice.

This suit was instituted by Texas Employers' Insurance Association in the 79th District Court of Jim Wells County, Texas, against Margaret K. Williams, Larry Williams and Margaret Lynn Williams, to set aside an award of the Industrial Accident Board of death benefits to the wife and children of Pete Williams resulting from his accidental death. The defendants filed a cross-action seeking to recover such death benefits from plaintiff, the alleged Workmen's Compensation Insurance car-

rier. Brown Oil Tools, Incorporated, was alleged to be the employer.

All facts were agreed upon except the question of whether Pete Williams was an employee of Brown Oil Tools, Inc., or an independent contractor at the time of his death. These issues were submitted to the jury and were answered that Williams was not an "employee" but an "independent contractor." Accordingly judgment was entered that cross-defendants take nothing, and Margaret K. Williams and her two children have prosecuted this appeal.

Appellants' first contention is as follows: "The findings of the jury that Pete Williams was not an employee of Brown Oil Tools, Inc., and was an independent contractor are contrary to the overwhelming preponderance of the evidence and are without support in the evidence, and were returned as the result of bias, prejudice, and passion and should be set aside."

A complete statement of the case might well be made here. In making this statement we will state the facts in the most favorable light to appellee, and where the evidence is conflicting we will give credence to that testimony which upholds the answers of the jury. This we must do in passing upon the sufficiency of the evidence to support the answers of the jury.

The Brown Oil Tools, Inc., is a corporation engaged in the business of manufacturing completion materials, cutting and fishing tools and servicing those tools to the oil industry. It was also engaged in the business of salvaging casing, tubing and stuck drill pipe by means of controlled explosions. This operation is usually referred to as "shooting of casing." It had several places of business in Texas and Louisiana, including Houston and Corpus Christi. Prior to January, 1947, one William Metzger had been doing this "casing shooting" work for the company in the Corpus Christi area. Metzger decided to retire from this work and so informed Pete Williams, who decided he would like to take over the work. Pete Williams owned and operated a business known as Williams Wireline Service, which engaged in shooting wells, tubing perforating,

484

screen shooting, paraffin scraping, fishing service and choke service. In connection with this business Pete Williams owned equipment, machinery, tools, appliances, reels, steel lines, truck and other paraphernalia. He maintained an office in Corpus Christi, Texas, and carried on his business in the Corpus Christi area. He had his own secretary, bookkeeper and some three to five other employees, carried workmen's compensation insurance on his employees, took out public liability insurance on his operations and truck, maintained records for social security, unemployment and withholding taxes on his employees, and did a business amounting to some $20,000 per year. Pete Williams went to Houston, where he contacted Carl Riesel, general superintendent of Brown Oil Tools, Inc., and explained to Riesel the general nature of his business. He evidenced his desire to enter into a contract to do shooting work for the company and, based upon that conversation, an oral contract was entered into, described in appellee's brief as follows: "First, it was agreed that Brown Oil Tools, Inc., would refer its customers' shooting orders to Pete Williams, and that Pete Williams would handle the shooting orders which he received, as well as those referred to him by Brown Oil Tools, Inc., upon the same basis as to division of profits; in other words, it was a reciprocal arrangement; second, it was agreed that when Brown Tools, Inc., received an order, Pete Williams would be notified and, thereafter, he would make his own arrangements with the customer, as to when, where and what was to be done; third, Brown Oil Tools agreed to furnish the container, the explosive and detonator caps, but Williams had the right to purchase these materials elsewhere, charging them to Brown Oil Tools; fourth, when he completed a job, Williams was to make out a job ticket, showing the number of shots, time spent, mileage, the charges to be made upon the customary rate in the field for different shots, ten cents per mile, and $35.00 a day, and to get the customer's approval on the ticket, after which the same was turned in to Brown Oil Tools for billing out; fifth, when and if the customer paid the statement, Williams was to get the mileage charge, the

$35.00 per day operator's charge, and fifty per cent of the charge for the shots, Brown Oil Tools to get the remaining fifty per cent; sixth, the contract was to become effective on January 1, 1941, and to be terminable by either party upon thirty days' notice to the other; seventh, that Pete Williams would furnish his truck, all tools and equipment and all other materials required, including fuel for his truck and maintenance thereof, and that Brown Oil Tools, Inc., would furnish only the container, explosive and detonating cap; eighth, Pete Williams was free to carry on his own business, to make his own arrangements with customers as to when he would do their shooting work, and he was not required to report to Brown Oil Tools at any time and had no hours of duty; he had access to Brown Oil Tools' warehouse to pick up the materials which it agreed to furnish, at his convenience."

Pete Williams performed two jobs under this contract and was attempting to perform the third when he lost his life. The first job was for the Republic Natural Gas Company on January 7, 1947. The second was on January 15, 1947, for D. & W. Tool Company. In each of these two instances the call for the work came to Brown Oil Tools, Inc., and was referred to Williams. On January 24, 1947, a call came from Sun Oil Company to Brown Oil Tools, Inc., for a shooting job on their Canales lease. Pete Williams was notified and Sun Oil Company was also directed to get in touch with Williams, which they did. Williams was at the time engaged in a job for Humble Oil Company with which Brown Oil Tools, Inc., had no connection. Williams informed Sun Oil Company that he would get on their job just as soon as he had finished the job he was on. All arrangements for the job were made between Sun Oil Company and Williams. The job was begun on January 25, 1947. Williams had with him one Butler, who was his employee, and Brown Oil Tools, Inc., did not have a representative on the job. Williams shot the casing twice without complete success and on the following day, while preparing another bomb it exploded killing Williams, Butler and one Jordan, an employee of Sun Oil Company. On each of these jobs the

Brown Oil Tools, Inc., had no one present to direct or control the details of the work, but had left such matters entirely to the judgment and discretion of Williams.

A person employed to do work for another is either an employee of such person or an independent contractor. An employee is covered by the Workmen's Compensation Act, art. 8306 et seq., Vernon's Ann.Civ.Stats., and an independent contractor is not. In Shannon v. Western Indemnity Co., Tex.Com.App., 257 S.W. 522, 523, Street on Personal Injuries is quoted with approval, as follows: "No better test can be applied than to say that the relation of master and servant exists where the master retains or exercises the power of control in directing, not merely the end sought to be accomplished by the employment of another, but as well the means and details of its accomplishment; 'not only what shall be done, but how it shall be done.'"

In the same case the definition of an independent contractor is given in the following language: "A contractor is any person who, in the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control in respect to all its details. The true test of a contractor would seem to be that he renders service in the course of an independent occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished."

In this case the burden of proof was upon appellants to establish by a preponderance of the evidence that Pete Williams was an employee as distinguished from an independent contractor. Shannon v. Western Indemnity Co., supra.

Appellants contend that when a person is shown to be performing work for another that he is presumed to be an employee. This, as a general rule, is probably true. Here, however, Williams was performing work for Sun Oil Company, and if any presumption would be indulged in along this line it would be that he was an employee of Sun Oil Company. He was performing work for Brown Oil Tools, Inc., in the sense that he had a contract with that company to perform casing shooting jobs that came to them. Whether he was an employee or an independent contractor would depend upon the terms of the contract, and if the relation cannot be so determined then the manner in which the work was carried on and all other surrounding circumstances should be investigated. Shannon v. Western Indemnity Co., Tex.Com.App., 257 S.W. 522; Southern Underwriters v. Samanie, 137 Tex. 531, 155 S.W.2d 359.

We are of the opinion that in this case the terms of the contract determine the matter and under such provisions Williams was an independent contractor. (1) The work he was to do ("shooting casing") required special skill. (2) He did the work in his own way, only being required to do it to the satisfaction of the customer, and Brown Oil Tools, Inc., did not agree to furnish him any help or supervision. (3) Williams agreed to furnish his own truck, wrenches, lines and other tools. (4) He was not working for wages. In addition to 10c per mile for his truck and $35 per day, he received one-half of the charge made per shot. (5) He was a free agent as to his hours of labor and he carried on his own business at the same time, with the consent of Brown Oil Tools, Inc.

It will be borne in mind that we are not here passing upon the question as to whether or not Williams was an independent contractor as a matter of law, as we need go no further than to determine the sufficiency of the evidence to support the finding of the jury to that effect.

We are of the opinion that the provisions of the contract were sufficient to support a finding that Pete Williams was an independent contractor, and hence the verdict of the jury was not contrary to the overwhelming weight and preponderance of the evidence.

If, however, the provisions of the contract were not sufficient to support a finding that Williams was a contractor, then the manner in which the work was carried on lends further support to the finding of the jury. Brown Oil Tools, Inc., received a call from Sun Oil Company stating that

it had a shooting job. Sun Oil Company was told to get in touch with Pete Williams and, likewise, Brown Oil Tools, Inc., notified Williams of the job and thereafter Brown Oil Tools, Inc., stepped out of the picture and Williams took over. He got the necessary explosives and other equipment together and started the work at a time agreed upon between him and Sun Oil Company. Brown Oil Tools, Inc., had no one present to supervise the work other than Williams. He did the work in his own way. He was killed during the progress of the work and hence there was no job ticket made or any other evidence of what kind of a report he would have sent in on the job if he had lived to complete it. There was nothing in the manner in which the work was carried on to indicate that Williams was other than an independent contractor.

The facts are never quite the same in Workmen's Compensation cases, and in determining whether a workman is an employee or an independent contractor each case must stand more or less upon its own peculiar facts, but in passing upon the question here presented we have found the following cases helpful. Liberty Mutual Ins. Co. v. Boggs, Tex.Civ.App., 66 S.W.2d 787; Dave Lehr, Inc., v. Brown, Tex.Com. App., 91 S.W.2d 693; Smith Bros., Inc., v. O'Bryan, 127 Tex. 439, 94 S.W.2d 145; Security Union Ins. Co. v. McLeod, Tex. Com.App., 36 S.W.2d 449; Shannon v. Western Indemnity Co., Tex.Com.App., 257 S.W. 522; Dennis v. Tex. Emp. Ins., Tex.Civ.App., 116 S.W.2d 492; Industrial Indemnity Exchange v. Southard, 138 Tex. 531, 160 S.W.2d 905; Southern Surety Co. v. Shoemake, Tex.Com.App., 24 S.W.2d 7; Underwriters v. Samanie, 137 Tex. 531, 155 S.W.2d 359; Herndon v. Halliburton Oil Well Cementing Co., Tex.Civ.App., 154 S.W.2d 163; Bowman v. Traders & General Ins. Co., Tex.Civ.App., 208 S.W.2d 420; Standard Ins. Co. v. McKee, Tex. Sup., 205 S.W.2d 362.

It seems to us that under the provisions of the contract Pete Williams and Brown Oil Tools, Inc., entered into a joint adventure to do casing shooting work. Williams agreed to furnish his skill and ability to do the work, together with his truck and other equipment, while Brown Oil Tools, Inc., furnished the torpedo, including nitrogel, detonating cap and go-devil. If a call came for a casing shooting job, either to Williams or Brown Oil Tools, Inc., it was to be performed under their joint adventure agreement and the consideration received for the job divided in the proportion agreed upon. If Williams was a joint adventurer with Brown Oil Tools, Inc., then he was not its employee.

Appellants have cited at great length the case of Ochoa v. Winerich Motor Sales Co., 127 Tex. 542, 94 S.W.2d 416. In that case, which was a negligence case and not a Workmen's Compensation case, the jury had found that Ochoa was an employee of the Winerich Motor Sales Company. This Court of Civil Appeals held that Ochoa was an independent contractor, 58 S.W.2d 193. The Texas Commission of Appeals reversed that decision and upheld the verdict of the jury to the effect that Ochoa was an employee. Whether Ochoa was an employee as a matter of law was not a question the Commission of Appeals was called upon to decide. The decision of the Commission of Appeals in that case is in keeping with our decision here, that the question of employee or independent contractor under the facts in the case was a question for the jury.

Appellants further contend that the "work order" sent in by Williams on the first two jobs performed by him showed him to be an employee. We find nothing in the contract requiring Williams to send in a "work order" of this exact nature, and no such work order was sent in on the Sun Oil Company job, the reason being, perhaps, that Williams did not live to do so, but, nevertheless, it was not sent in. If, however, the terms of this work order would be considered it would tend to show that Williams was an employee of Sun Oil Company rather than Brown Oil Tools, Inc., which could not be under the holding in Herndon v. Halliburton Oil Well Cementing Co., Tex.Civ.App., 154 S.W.2d 163.

■ Appellants' points 2, 3, 4 and 5 relate to the refusal of the court to permit

them to prove up the contract between Brown Oil Tools, Inc., and Metzger and the facts concerning his employment.

We think this evidence was properly excluded. Appellants desired to prove up Metzger's contract and to show that under its terms Metzger was an employee of Brown Oil Tools, Inc., and then contend that Williams having succeeded Metzger that he was also an employee of the company. Such evidence is immaterial and irrelevant and is not admissible. 17 Tex. Jur. pp. 318 and 388; Fruth v. Gaston, Tex.Civ.App., 187 S.W.2d 581; Woodson v. Scott & White Hospital, Tex.Civ.App., 186 S.W.2d 720; Singer Sewing Machine Co. v. Kaltwasser, Tex.Civ.App., 255 S.W. 631; Reese v. Carey Bros., Tex.Civ.App., 286 S.W. 307; Daniels v. Wallace, Tex. Civ.App., 298 S.W. 649; J. B. Lloyd & Son v. Kerley, Tex.Civ.App., 106 S.W. 696.

Neither did the court err in not permitting the appellants to go into such matters on cross-examination. 44 Tex.Jur. Sec. 153, p. 1156; 45 Tex.Jur. Sec. 194, p. 29.

Such evidence was not admissible for impeachment purposes. Richmond v. Hog Creek Oil Co., Tex.Civ.App., 229 S.W. 563, Tex.Com.App., 239 S.W. 904.

■ By their sixth point appellants present the contention that the court erred in admitting in evidence contracts, dealings and book entries on transactions between Pete Williams and various oil companies. We overrule this contention, as such evidence was admissible to show the character and nature of the independent business operated by Williams. Industrial Indemnity Exchange v. Southard, 138 Tex. 531, 160 S.W.2d 905.

■ By appellants' seventh point they raise the contention that the court erred in admitting evidence that Brown Oil Tools, Inc., used a printed form of application for a job and a form to be signed on Withholding Tax Exemption, where the person was an employee, and that Williams did not sign such application and forms, such evidence being incompetent, self-serving, and hearsay in its nature. We overrule this contention. Such evidence was properly admissible as tending to show what construction the parties placed upon the contract they had entered into before any controversy had arisen. 10 Tex.Jur., § 171, p. 298; Lone Star Gas Co. v. X-ray Gas Co., 139 Tex. 546, 164 S.W.2d 504; Lido Oil Co. v. Waggoner Estate, Tex. Civ.App., 31 S.W.2d 154.

■ Appellants next assign as error the excluding of the statement of Pete Williams to his wife that he was going to work for Brown Oil Tools, Inc., part time. This statement was made by Pete Williams to his wife after he had entered into the oral contract here involved. Williams and his wife had journeyed together to Houston. When he met his wife after completing negotiations with Brown Oil Tools, Inc., he made this statement to her, according to her proffered testimony, how long after completing the contract is not shown. This testimony was properly excluded because it was not res gestae but was hearsay and self-serving. Furthermore, it did not have any bearing upon the question as to whether he was going to work as an employee or an independent contractor, the only issue here to be decided. City of Houston v. Quinones, 142 Tex. 282, 177 S. W.2d 259; Pacific Mutual Life Ins. Co. v. Schlakzug, 143 Tex. 264, 183 S.W.2d 709; Dale v. Stevens, Tex.Civ.App., 75 S. W.2d 129; Richardson v. Watson, Tex. Civ.App., 105 S.W.2d 473; Parker v. Schrimsher, Tex.Civ.App., 172 S.W. 165.

■ The court did not err in sustaining appellee's objection to counsel Ike Singer's argument to the jury to the effect that the witness Riesel had admitted he was a prejudiced witness. The court excluded this argument as being outside of the record in that it implied that Riesel had testified that he was a prejudiced witness. After this objection was sustained counsel was permitted to argue that from all the evidence Riesel was a prejudiced witness. The court's ruling was not error. Ramirez v. Aker, 134 Tex. 647, 138 S.W.2d 1054.

Finding no reversible error in the record, the judgment is affirmed.