**BURNS v. J. B. COLT CO.**

No. 3051.

Court of Civil Appeals of Texas. El Paso. July 5, 1934.

Rehearing Denied July 30, 1934.

G. O. Crisp and Ashworth, Crisp & Ashworth, all of Kaufman, for appellant.

John C. Read and Earl A. Forsythe, both of Dallas, for appellee.

PELPHREY, Chief Justice.

On February 18, 1931, appellant contracted to buy "One Colt, Lighting and Cooking outfit" and "One Colt, Carbide Generator, Model S" from appellee. Amanda Burns, the wife of appellant, signed the contract. On March 11th, thereafter, appellant and his wife executed two promissory notes, the first being for $266, due November 2, 1931, and the second for $133, due November 1, 1932.

Appellee filed this suit on the above notes on September 24, 1932, in the county court of Dallas county, at law, No. 2, naming appellant and his wife as defendants.

Amanda Burns in her answer alleged that she had signed the notes sued upon as surety for her husband; that she, before and at the time of making the contract sued upon, was the wife of appellant; that her disabilities had never been removed; that the contract was not for necessaries furnished to either her or her children; and that she was therefore not bound thereby.

Both defendants answered by general demurrer, general denial and, subject to such exception and plea of coverture, alleged that the contract of purchase, in pursuance of which the notes were executed, contained the following warranty: "Company warrants the generator to be of automatic inaction type, and of good material and workmanship and listed by Underwriters Laboratories (established and maintained by the National Board of Fire Underwriters) as in accordance with its standards of construction"—that the warranty was ambiguous and uncertain in its terms; that appellee's agent explained the expression "in accordance with its standards of construction" to mean that the plant would give good and perfect service for lighting and cooking purposes in the home of the defendants for a period of at least 12 months, consuming not exceeding 200 pounds of carbide; that they operated the plant for 57 days, and that instead of giving service for 12 months it gave service for only the 57 days; that the operating expense of the plant was the essence of the contract and the consideration for the purchase thereof; that appellee represented to defendants that the operating cost of the plant 12 months would be $11.70, when in truth and in fact it would aggregate more than $75; that they relied upon the warranty as explained by appellee's agent and that had they

known that the plant would not give service for 12 months with a consumption of 200 pounds of carbide, they would not have entered into the contract of purchase.

Upon a trial before the court, judgment was rendered in favor of appellee and against appellant for $391.50, $46.06 interest, and $65.53 attorney's fees, and that as to Amanda Burns, appellee take nothing.

Burns duly perfected his appeal.

### Opinion.

■ Appellee in its first counter proposition contends that no grounds for reversal are presented because appellant's brief contains no assignments of error.

Such a holding was made by the Texarkana Court of Civil Appeals in Metropolitan Casualty Ins. Co. of New York v. McCarvell et al., 60 S.W.(2d) 1061, but the Supreme Court [1] granted a writ in the case, and, in doing so, said: "Court of Civil Appeals erroneously held that under article 1757, R. C. S. as amended by the Acts of 1931, 42d Leg., c. 45, § 1 (Vernon's Ann. Civ. St. art. 1757) it was necessary for appellant's brief to contain formal assignments of error."

This action clearly indicates the opinion of the Supreme Court on the question, and, in deference thereto, we must disagree with appellee's contention here. Appellant's two propositions are that the court erred in not rendering judgment for him and in excluding evidence as to the representations made by appellee's agent.

■ In their amended answer defendants, after setting out the warranty clause of the contract, alleged: "Defendants further show that the plaintiff represented to the defendants that the above warranty which is ambiguous and uncertain in its terms, that the expression in said warranty in accord with its standards of construction, was explained by plaintiff's agent, R. N. Folby, to mean, that said plant would give good and perfect service for lighting and cooking purposes in the home of the defendants for a period of at least 12 months consuming not exceeding 200 lb. of carbide."

Then follows an allegation that the plant instead of giving service for 12 months, upon trial, gave service for only 57 days, and a tender of the property to plaintiff.

The answer proceeds:

"Defendants further answering herein show to the court that the operating expense of said plant was the essence of the contract and the consideration for the purchase of said equipment and that the plaintiff represented to the defendants that said plant would operate for a period of 12 months at a total cost of $11.70, but that in truth and in fact the operating expense, the cost of the carbide instead of being $11.70 per year, will aggregate more than $75.00 per year.

"Defendants further answering herein show to the court that they relied upon the warranty as explained to them by the plaintiff, and defendants relied upon the warranty aforesaid which was the essence of this contract and the consideration therefor; that said plant would operate perfectly and give perfect satisfaction for a period of 12 months at a cost of not exceeding $11.70 for said time and being the cost of 200 lb. of carbide."

"For further answer herein defendants show that had they known that said plant would not give service for lights and cooking purposes for a period of 12 months, with the consumption of 200 lb. of carbide, they would not have entered into the contract of purchase herein sued upon but that they believed and relied upon the warranty aforesaid and by reason of such belief and reliance they made the contract herein sued upon.

"Wherefore, defendants say that the warranty aforesaid for which said contract was given, has been wholly breached by plaintiff. And of this they pray judgment that plaintiff take nothing by its suit. * * * "

It will be seen from reading the whole of defendant's answer that their defense was based solely upon the warranty clause as it had been explained to them by plaintiff's agent.

The warranty clause was to the effect that the generator was of automatic-in-action type; that it was of good material and workmanship; and that it was listed by Underwriter's Laboratories as in accordance with its standards of construction.

There is no contention that it was not of automatic-in-action type; there is no claim that it was not of good material and workmanship; and there is no allegation in the above-quoted pleading that Underwriter's Laboratories did not have it listed as in accordance with its standards of construction. The fact that plaintiff's agent may have explained that the expression, "in accordance with its standards of construction," meant that it would furnish service for lighting and

[1] Still pending at date of publication.

cooking in defendant's home for 12 months on 200 pounds of carbide, was not a representation that it would, as we read the warranty clause.

The most that can be said is that the plaintiff warranted the generator to be listed by the Underwriter's Laboratories as being in accordance with its standards of construction, and that plaintiff's agent explained those standards to be that it would serve defendants for lighting and cooking for 12 months on 200 pounds of carbide.

In our opinion the pleading of defendants is insufficient to show a breach of any of the conditions of the warranty clause, and, therefore, constituted no defense.

If we be correct in that view, then the propositions advanced by appellant should be overruled and the judgment of the trial court affirmed, and it is so ordered.

