THE PRAETORIANS V. MRS. EULA E. REDMON.

No. 7122. Decided January 18, 1939.
Rehearing overruled February 15, 1939.
(123 S. W., 2d Series, 644.)

*J. W. Randall* and *James F. Gray,* both of Dallas, for plaintiff in error.

A proposition made by appellant in its brief, followed by a statement connecting it with the case, is not necessarily a mere abstraction simply because it does not contain identifying details tying it into the case, and it was error for the court to decline to consider the brief on the grounds that it was a mere abstraction. Obets v. Oppenheimer, 63 S. W. (2d) 320; Henderson v. Page, 78 S. W. (2d) 293; Robert & St. John Motor Co. v. Bains, 57 S. W. (2d) 872.

Where a policy of insurance lapsed for nonpayment of premiums and all available guaranty fund or reserve accumulated to such policy had been borrowed by the insurer prior to that date, the beneficiary should not be allowed to recover thereon by reason of insured's death, and where the policy provided that, under such circumstances, all benefits thereunder has ceased. Plaintiff should not be allowed any judgment in excess of $82.31. It was also error for the trial court to render judgment for double the amount of the policy, under the double indemnity clause, for the reason that if the contract of insurance had lapsed the double indemnity clause was not applicable. Manhattan Life Ins. Co. v. Wilson Motor Co., 75 S. W. (2d) 721; Sovereign Camp W. O. W. v. Alston, 82 S. W. (2d) 710; Neal v. Columbian Mutual Life Assurance Soc., Miss., 138 So. 353.

*Lee T. Moore, Jr., Hughes & Monroe* and *Johnson & Tomlinson,* all of Dallas, for defendant in error.

Death of the insured after a default in payment of premiums within the period allowed by the policy for the exercise of options as to benefits, without having exercised such option, rendered the insurance company liable for the full amount of the policy, since where there are ambiguous provisions in a policy of life insurance, the court will construe the contract most favorably to the insured and will reject that construction which would defeat the insurance or forfeit the policy. American Ind. Co. v. Mexia Ind. Sch. Dist., 47 S. W. (2d) 682; National Surety Co. v. Chalkley, 260 S. W. 216; 24 Tex. Jur., 863.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

This suit is by Mrs. Eula E. Redmon against The Praetorians, a fraternal benefit society, upon a certificate issued on the life of her husband for the sum of $1,000.00 with double indemnity provision is case of accidental death. A double indemnity judgment in her favor for $2,000.00 less $81.00 borrowed by the insured on the policy prior to his death, was affirmed by the Court of Civil Appeals. 93 S. W. (2d) 607. The writ was granted upon application of The Praetorians. The parties will be referred to as plaintiff and the society, and the deceased, as the insured.

The case was tried without the aid of a jury upon an agreed statement of facts.

The society's brief filed in the Court of Civil Appeals contained, besides a "Statement of Nature and Result of the Suit"; a "First Proposition," with notation at its conclusion that it is germane to assignments of error Nos. 1 to 5 inclusive; a "Statement" under the proposition (both statements carrying verifying record references); a notation of "Authorities," an "Argument," and the five assignments of error referred to in connection with the proposition.

The proposition and assignments are all set out in the opinion of the Court of Civil Appeals, none of which it considered. The Court did not, as the opinion states, feel it was its duty to consider the proposition because it "is a mere 'abstraction' and does not point out the action of the (trial) court and the error committed"; and furthermore because "it is multifarious and connects the matters thus too generally complained of, disjunctively." The Court declined to consider any of the assignments for the reason stated in the opinion in connection with each assignment respectively, and concluded the discussion with the statement that having found "no fundamental error" it affirmed the judgment of the trial court.

■ We are not in accord with the action of the Court of Civil Appeals in declining to consider the assignments. The preliminary statement and the Statement following the proposition, together with record references noted to the agreed statement of facts upon which the case was tried, disclosed that the insured died on October 11, 1933; that the monthly premiums had at that time been paid "up to the 1st of September" of that year, at which time the certificate lapsed for default in payment of dues; and that at the time of the death of the insured there was an outstanding loan against the certificate in the sum of $81.00.

It is unnecessary to comment upon the failure of the Court to consider the more or less general proposition urged by the

society further than to say that, standing alone, it is subject to the criticism visited upon it. The assignments, however, should have been considered.

Assignment No. 3 reads:

"The court erred in rendering judgment for the plaintiff, Mrs. Eula E. Redmon, for double the face of the contract of insurance under the Double Indemnity Clause, for the reason that under the undisputed evidence and agreed statement of facts the contract of insurance had lapsed and the Double Indemnity Clause was not applicable, and the plaintiff was not entitled to recover thereunder."

The reasons assigned in the opinion for declining to consider the foregoing assignment are substantially that the brief does not contain statements from the record showing either that the certificate had lapsed at the time of the insured's death, or that the trial court rendered judgment for double indemnity.

The reasons given overlook the fact that it is stated in the brief substantially, when verifying record references are consulted, that plaintiff sued on a certificate "in the sum of $1,000.00, with double indemnity provisions * * *," and that the judgment was against the society, "in the sum of $2,000.00 under the double indemnity provision * * * less $81.00 borrowed by the insured prior to his death * * *." They overlook also that the agreed statement referred to in the assignment contains a copy of the "Double Indemnity Supplement" attached to the certificate, which sets forth both the terms under which the society binds itself to pay double indemnity and the conditions upon which double indemnity becomes inoperative. The supplement provides that the obligation to pay double indemnity "shall automatically expire * * * (3) upon default of premium payments on * * * the original certificate to which it is attached * * *." It also appears from the agreed statement that sections 2 and 3 of the constitution and by-laws of the society provide in effect that the premiums shall be paid on or before the first day of the month and not later than the last day of the month, and that in the event a certificate holder fails to pay premiums on time the certificate "shall lapse immediately without notice and all rights, privileges and benefits shall cease at once, except as to any paid-up and extended values."

■ The insured having died on October 11, 1933, without having paid either the September or October premiums, the certificate lapsed September 1st, 1933; and obviously, having

lapsed, the obligation to pay double indemnity automatically expired.

The assignment discussed and others to be later considered were sufficient to direct the attention of the Court of Civil Appeals to the action of the trial court upon the respective matters complained of, and likewise to the error of that court in rendering judgment for double indemnity. Art. 1757, R. S. 1925 as amended by Acts 1931, 42nd Leg., p. 68, ch. 45, sec. 1; and article 1844, R. S. 1925 as amended by Acts 1931, 42nd Leg., p. 117, ch. 75, sec. 1; Arts. 1757 and 1844, Vernon's Texas St. 1936; Lamar-Delta Co. Levee Imp. Dist. v. Dunn et al (Com. App.) 61 S. W. (2d) 816; Burns v. J. B. Colt and Co. (Civ. App.) 74 S. W. (2d) 156; Pelton v. Allen Inv. Co., 78 S. W. (2d) 272; Tarrant County et al v. Hollis et al., 89 S. W. (2d) 835. The Court of Civil Appeals committed reversible error in not considering the assignments.

The society complains by its remaining assignments, which will be considered together, that the trial court erred in so applying the accumulated reserve as to keep in force the full face of the contract, the ground of the complaint being that the reserve should have been applied, if at all, (which was denied) to the purchase of extended insurance in such amount as results when the face of the certificate is reduced in the proportion which the net indebtedness against the certificate bore to its cash value. The position of the society appears more fully in its further complaint that the court erred in utilizing the reserve accumulated during a portion of a year only, the ground being that under the terms of the non-forfeiture privileges no application of the reserve could be made except at the end of a policy year. The society's alternative position is that plaintiff was not entitled to recover, if at all, in excess of $82.31.

Plaintiff's first counter proposition is in effect that because of ambiguity in the contract provisions they should be most strongly construed against the society, with the result that the judgment of the trial court be upheld for its full amount. This position cannot be sustained.

Notwithstanding ambiguous provisions of the certificate are required to be construed *against* the society, they cannot be made the basis of a judgment against it which *is contrary to* other clear and unequivocal separable provisions. In other words a judgment should not have been awarded for double indemnity in the face of the clear and unequivocal stipulation in the contract that the double indemnity obligation would

automatically expire upon lapse of the certificate. The ambiguous provisions of the contract deal with the amount and form of insurance, if any, to which the beneficiary is entitled under the non-forfeiture privileges of the certificate after its lapse. They will be hereinafter set out and discussed.

■ The position of plaintiff as presented in her second counter proposition is that the amount of the reserve accumulated to the credit of the insured at the time of his death should have been so applied as to prevent a complete forfeiture of all accrued benefits; and while the position to the extent stated in correct, her further position that the amount of insurance stipulated in the face of the certificate was not reduced upon the death of the insured and automatically converted into extended term insurance, cannot be sustained. Likewise neither the position of the society to the effect that all benefits under the contract had ceased at the time of insured's death, nor its alternate position that the amount of extended insurance, if any, in force at such time was only $82.31, can be sustained.

It is provided in section 3 of article XX of the constitution and by-laws that upon lapse of the certificate all benefits shall cease at once, *except as to any paid-up and extended values * * *."* (Italics ours.)

The certificate sued upon contains a table of non-forfeiture values showing the *loan* values available to the insured during any year covering a period of twenty years following the issuance of the certificate, provided all dues for the year in question have been paid. The table shows also the *cash* value which the insured is entitled to receive as of the end of the year in question provided that within thirty days he elects, as stipulated in the non-forfeiture privileges, to comply with "Option 1" thereof. It shows also the amount of "paid-up life insurance" to which the insured is entitled as of the end of such year if within thirty days, as stipulated, he elects to comply with "Option 2"; also the term in years and months of extended insurance into which the certificate is converted if the insured elects to comply with "Option 3." That portion of the table covering a period to the end of the sixth year only is as follows:

| End of Year | Cash or Loan Value | Paid-up Life Insurance | Extended Insurance Years | Months |
|---|---|---|---|---|
| 2 | $ 20.00 | $ 00.00 | 0 | 0 |
| 3 | 39.00 | 82.00 | 2 | 10 |
| 4 | 60.00 | 122.00 | 4 | 0 |

| | | | | |
|---|---|---|---|---|
| 5 | 81.00 | 161.00 | 5 | 0 |
| 6 | 103.00 | 200.00 | 6 | 0 |

The non-forfeiture privileges set out in the certificate read:

"Within one month after any anniversary date hereof, or at any time within thirty days after default in the payment of dues, and after two full years' dues shall have been paid hereon, the insured shall be entitled to select one of the following surrender options:

"Option 1. Surrender the certificate for its cash value.

"Option 2. Surrender the certificate for paid-up life insurance.

"Option 3. Have the certificate endorsed as extended term insurance.

"The values under each option are shown in the table below if there is no indebtedness against this certificate. Any indebtedness will be deducted from the cash value if option 1 is selected, and will reduce the amounts under either option 2 or 3 in the proportion that the indebtedness bears to the cash value but the extended term period will remain the same as set out in the table. When the total indebtedness exceeds the cash surrender value of this certificate all values hereunder shall automatically cease and this contract will be of no further force or effect.

"*Option 3 shall become effective automatically in the event the insured fails to make a selection during the sixty days after default in payments.*

"Extended insurance when effective shall date back to and extend from the first of the month when default occurred, and no accident or disability benefit shall be available under such paid-up or extended insurance. * * *.

"The *loan values* in the table for any year set opposite are available any time during the year *if all dues for said year have been paid*. All other values apply *as of the end of the year.*" (Italics ours.)

It will be noted that neither the first nor second option (the surrender options) becomes effective unless selected by the insured within thirty days after default in the payment of his dues. Neither was selected by him within such time and need not be further considered. Nor did the insured within sixty days after default select the third option, having died forty-one days after such default without having exercised any one of the three options.

It will be observed, however, that the effectiveness of "Option 3" is not made dependent solely upon its selection by the insured. It becomes effective automatically by virtue of

the insured's mere failure "to make a selection during the sixty days after default in payments." The stipulation upon which the third option's becoming effective is made to depend, it will be noted, is not conditioned upon the insured's living for sixty days after default, and the society, the language of its contract being most strongly construed against it, cannot correctly insist that the stipulation is not operative because the insured died before expiration of the sixty-day period.

The total indebtedness against the certificate at the time of the insured's death did not exceed its cash surrender value, hence the provision to the effect that in such event "all values" under the contract would thereupon "automatically cease" has no application. The certificate lapsed on September 1, 1933, but at that time a reserve value had accumulated thereon by virtue of the following facts: On December 31, 1932, the insured procured a loan on his certificate in the sum of $81.00, its full loan value for a period of five years. At that time the certificate lacked six months of being five years old, and the insured, in order to procure the benefit of its full loan value as of the end of its fifth anniversary year, paid the dues for a period of six months in advance to the end of such period, May 28, 1933, or, for all practical purposes, to the first of June of that year. On that date the value of the certificate was entirely depleted, but between that time and the date of the lapse, the insured paid his dues for June, July and August of 1933, thus carrying the certificate in full force for one-fourth of the sixth year of the certificate, to September 1, 1933, the date of its lapse. The insured died forty-one days later without having been reinstated. The amount of the reserve accumulated to the certificate at the time of the insured's death was $7.12, which, deducted from the amount of the loan left outstanding a net indebtedness against the certificate of $73.88.

It will be observed from the non-forfeiture provisions set out above that "any indebtedness (against the certificate) * * * will reduce the amount (of insurance) * * * under * * * Option 3 * * * in the proportion that the indebtedness bears to the cash value, but the extended term period will remain the same as set out in the table"; also that all non-forfeiture values other than the "loan values in the table," apply *as of the end of the year in question.* It will be observed from the above table that the cash value of the certificate at the end of the year (the sixth) during which the insured died and for a portion of which he had paid his dues, is $103.00.

The incorrectness of the society's alternative position that the correct amount of extended insurance is $82.31, appears in the letter of its consulting actuary showing the method employed in calculating the amount. The part of the letter material here reads:

"Premiums having been paid for only 5 full years and the outstanding loan being for the full 5th year policy value, there could be no value under the policy unless we grant a pro rata increase in the policy value for that portion of the 6th policy year for which premiums have been paid. I have, therefore, made a computation upon this basis and also computed a refund of unearned interest as of September 1, 1933, in order to compute as much value as the policy could possibly have under the terms of the Whole Life policy actually issued or under the terms of any other policy then or thereafter issued by the Praetorians. By this method I arrived at a net value of $7.12 after deducting a net indebtedness of $79.38. This net value could not have made the policy in force for any greater portion of its face amount than represented by the ratio of 7.12/86.50. This gives $82.31 as the amount of extended insurance that might have been in force at the date of death of the policyholder. Computed another way, the reduction due to the indebtedness would have been that portion of $1,000 represented by the fraction 79.38/86.50 which gives a reduction of $917.69.

"The computations are as follows:

| | | |
|---|---|---:|
| "Value at end of 6th policy year | | $103.00 |
| "Value at end of 5th policy year | | 81.00 |
| "Increase in value for 6th year | | 22.00 |
| "Increase in value for 3 mos. on 6th yr. | | 5.50 |
| "Add value at end of 5th year | | 81.00 |
| "Value at end of 5 1/4 years | | 86.50 |
| "Policy Loan | $81.00 | |
| "Less unearned Int. 9/1/33 | 1.62 | |
| "Net Indebtedness | | 79.38 |
| "Net Policy Value. | | 7.12 |
| "Amt. Extd. Ins. equals 7.12/86.50 X 1000 equals | | 82.31 |

OR,

"Face amount                              $1,000.00

"Reduced by 79.38/86.50 X 1000      917.69

"Amount Ext. Ins. in force      $  82.31

"Please understand the above calculations are made upon the basis of arriving at the maximum possible insurance liability under the policy in question as of the date of death of the policyholder, namely, October 11, 1933."

The letter discloses that the values employed in making the calculation are the loan values set out in the table, whereas it is provided in the non-forfeiture privileges that the values under the options are shown in the table only *"if there is no indebtedness against the certificate."* (Italics ours.) The first method of calculation discloses also that the loan value of the certificate is employed rather than the *cash* value and that the value is applied for a "portion of the sixth policy year" rather than "as of the end of" that year. It discloses also that the net indebtedness against the certificate is calculated to be $79.38 by deducting from the amount of the loan ($81.00) only that portion of the accumulated reserve represented by unearned interest ($1.62) rather than by deducting the entire amount of the reserve ($7.12). The second computation is made by a correct method but the result arrived at ($82.31) is incorrect in that the fraction employed in reducing the face of the certificate is composed of erroneous amounts computed by the first method of calculation. In other words the fractional reduction made should have been 73.88/103.00 of $1,000.00 rather than 79.38/86.50 of that amount.

■ The value to be applied in calculating the amount of extended term insurance that became effective automatically upon the death of the insured during the sixth certificate year is its cash value as of the end of the year, which is $103.00. The amount of insurance for which the beneficiary was entitled to have the certificate endorsed as extended term insurance under the third option is the face amount of the certificate reduced in the proportion of $73.88 to $103.00. Such reduced amount calculated in the manner stated is $282.72, and represents the amount of extended term insurance which became "effective automatically" upon the death of the insured. The trial court should have rendered judgment for plaintiff in such amount.

For the errors pointed out the judgment of the Court of Civil Appeals affirming the judgment of the trial court is re-

versed. The trial court's judgment is set aside and judgment is here rendered for defendant in error in the sum of $282.72,

Opinion adopted by the Supreme Court January 18, 1939.

Rehearing overruled February 15, 1939.