THE SOUTHERN UNDERWRITERS V. I. O. SAMANIE.

No. 7660. Decided July 9, 1941.
Rehearing overruled November 5, 1941.
(155 S. W., 2d Series, 359.)

*Benbow, Saunders & Holliday, Henry D. Akin,* of Dallas, *Greenwood, Moody & Robertson,* and *Thos. B. Greenwood,* all of Austin, for plaintiff in error.

Plaintiff was not an employee of the lumber company but was an independent contractor for the reason that at the time of the accident involved the lumber company had no right of control over the details of the work of the said claimant who had a hauling contract with the lumber company, to whom he was responsible for the results of his work and not for the method and means by which it was accomplished, and therefore the Southern Underwriters was not liable to the plain-

tiff under the insurance contract issued by it on the employees of the lumber company, and it was error for the trial court to overrule defendant's request for an instructed verdict in its favor. Dave Lehr, Inc., v. Brown, 127 Texas 236, 91 S. W. (2d) 693; Traders & Gen. Ins. Co. v. Jones, 95 S. W. (2d) 189; Smith Bros. v. O'Bryan, 127 Texas 439, 94 S. W. (2d) 145.

*Collins, Pate, Hatchell & Garrison,* of Lufkin, for defendant in error.

At the time of his injury plaintiff was working for the lumber company under an oral contract of hire, which created the legal assumption that he was an employee of the lumber company and that the relation of master and servant existed by virtue thereof. Taylor, B. & H. Ry. Co. v. Warner, 88 Texas 642, 32 S. W. 868; Liberty Mut. Ins. Co. v. Boggs, 66 S. W. (2d) 787; Buckley v. Gulf Ref. Co., 123 S. W. (2d) 970.

MR. PRESIDING JUDGE SMEDLEY delivered the opinion of the Commission of Appeals, Section B.

This is a workmen's compensation case, in which plaintiff in error, The Southern Underwriters, is the insurer and defendant in error, Samanie, the claimant. The district court, in trial before a jury on special issues, rendered judgment in favor of defendant in error against plaintiff in error for $6,655.39, being compensation at the rate of $20.00 a week for 401 weeks, reduced to a lump sum. The trial court's judgment was affirmed by the Court of Civil Appeals. 130 S. W. (2d) 1090.

It was held by the Court of Civil Appeals that twenty-seven of the thirty-one assignments of error contained in the appellant's brief were too general, failed to point out any specific error and should not be considered. Four of the questions submitted under assignments of error that the Court of Civil Appeals declined to consider have been brought forward in the application for writ of error.

The first question, which is whether the uncontroverted evidence shows as a matter of law that defendant in error was at the time of his injury an independent contractor and not an employee of the insured, was presented in the Court of Civil Appeals by two assignments, one being that the trial court erred in overruling defendant's motion for an instructed verdict and the other that the trial court erred in refusing to give in charge to the jury defendant's requested instruction No. 1, which was a request for peremptory instruction. Under

these assignments the appellant presented several propositions, which were in substance that the uncontroverted evidence showed that at the time of the accident the insured had no right of control over the details of the appellee's work and exercised no control, but that appellee had a hauling contract with the insured to whom he was responsible only for the results of his work and not for the method and means of accomplishing the work, and that consequently as a matter of law appellee was not an employee of the insured but was an independent contractor. The propositions are followed by an elaborate statement quoting the testimony as to the contract of employment, the character of appellee's work, the manner in which it was done and the control which the insured could and did exercise over him, with references to the statement of facts.

By appropriate assignments of error in the application for the writ plaintiff in error brings forward its contentions that the trial court erred in submitting conditionally, rather than unconditionally, its defense that defendant in error's incapacity was temporary and its defense that defendant in error's incapacity was partial. Several assignments of error in appellee's brief in the Court of Civil Appeals presented these two contentions. Typical of them is the twenty-third assignment of error, which is as follows:

"The court erred in overruling defendant's objections and exceptions to the instruction immediately preceding Special Issue No. 12 wherein the jury is instructed that if they have answered Special Issue No. 7 'Yes,' then they should answer Special Issue No. 12, set forth in paragraph 29 of defendant's objections and exceptions to the court's charge in that portion of such paragraph 29 which immediately precedes sub-division (a) of such paragraph 29, taken together with sub-division (c) of such paragraph 29, as shown by the record herein."

The brief contains propositions germane to the assignment above quoted and other similar assignments and making proper reference to them, pointing out with particularity why the rulings referred to in the assignments are claimed to be erroneous and clearly presenting the contention that the court erred in submitting the issues as to temporary incapacity and partial incapacity conditioned on the answer to the issue as to total permanent incapacity. The propositions are followed by statement setting out the issues submitted, the written objec-

tions made to the submission of the particular issues conditionally and testimony raising the issues of temporary and partial incapacity, with references to pages of the transcript and the statement of facts.

1 The assignments of error presented in the Court of Civil Appeals and above referred to are in our opinion sufficient and should have been considered. Each of said assignments distinctly and clearly directs the attention of the court to the error of which complaint is made. Each is supported by a proposition which plainly states the reasons by which the allegation of error is sought to be sustained. The propositions are followed by adequate statements, with references to the record. Article 1757, Revised Civil Statutes of 1925, as amended by Chapter 45, Acts Regular Session, 42nd Legislature; Article 1844, Revised Civil Statutes of 1925, as amended by Chapter 75, Acts Regular Session, 42nd Legislature; Clarendon Land, etc. Co. v. McClelland Bros., 86 Texas 179, 189-192, 23 S. W. 576; 1100; Stillman v. Hirsch, 128 Texas 359, 99 S. W. (2d) 270; Gavin v. Webb, 128 Texas 625, 101 S. W. (2d) 217; The Praetorians v. Redmond, 132 Texas 432, 123 S. W. (2d) 644.

Defendant in error Samanie at the time of his injury was hauling logs for J. S. Hunt Lumber Co., Inc. The court instructed the jury that by the term "employee" as used in the charge was meant "every person in the service of another under any contract of hire, express or implied, oral or written, whereby the employer has the right to control and direct the manner, means and method in performing the work, except one who is not in the usual course of trade, business, profession or occupation of his employer." The jury, by affirmative answers to special issues, found that Samanie "was an employee of J. S. Hunt Lumber Company, Inc.," when the injury was suffered and that "J. S. Hunt Lumber Company, Inc. retained the right to control and direct the manner, means and method used by the plaintiff I. O. Samanie in performing the material details of the work in which he was engaged when he sustained said injury."

2 The first assignment in the application for writ of error presents the contention that according to the undisputed evidence defendant in error was an independent contractor and not an employee of the lumber company. The evidence as to the contract of employment, which was oral, throws little light on the question whether the lumber company in its em-

ployment of Samanie retained the right of control over him. It becomes necessary in the solution of the question first presented to consider not only the evidence as to the terms of the contract when made, but also the evidence with reference to the control that was actually exercised, for it is relevant and admissible as tending to prove what the contract really contemplated. Lone Star Gas Co. v. Kelly (Com. App.) 46 S. W. (2d) 656; Note 20 A. L. R., p. 684, 725; 27 Am. Jur., p. 488, sec. 6.

**3** J. S. Hunt Lumber Company, Inc., owned and operated a sawmill in the town of Willis which was supplied in part at least by logs cut in the woods about 40 miles distanct from Willis and brought to the mill in trucks. Some of the logs were hauled to the mill in trucks owned by the lumber company and operated by its employees and others in trucks driven by their owners, who were employed to furnish, maintain and drive their own trucks. John Muller, as assistant manager of the lumber company, controlled and operated the mill and the woods, had charge of getting the logs from the woods to the mill, and employed those who drove the trucks. Defendant in error Samanie began working for J. S. Hunt Lumber Company, Inc., in the first part of February, 1938. He was injured March 14, 1938. Before his employment by the Hunt Company, Samanie had hauled logs for others in the same vicinity, using his truck and receiving as payment an agreed sum per 1000 feet. His testimony as to the terms of his employment by Muller for the Hunt Company is in substance: He went to see Muller and asked him to give him a job and Muller said "all right" and told him that the timber was on the Golite tract, about 40 miles from Willis, and that he would pay him $6.00 per 1000 feet to haul the timber out of the woods into Willis. It was agreed that Samanie should furnish his own truck and trailer equipment, buy all gasoline and oil, and keep the truck repaired, and that Mueller should have the cutting and loading done, Samanie not being required to assist in loading the truck. Samanie testified that when he first started to go to work Muller told him to report in the woods as early as possible and to try to get three loads a day, to try to get in before night, but if not to come on in with the load. Muller's testimony as to the terms of the employment is that he employed Samanie to haul logs from the Golite tract to the mill, agreeing to pay him $6.00 per 1000 feet to deliver the logs and put them on the skidway; that Samanie could go to work at any time of the day that he wanted to and could quit when-

ever he pleased; that when he employed Samanie he did not tell him that he was going to direct the route that he would take.

Samanie's testimony about the extent of the control actually exercised over him by Muller is substantially as follows: Muller from time to time instructed him as to the tracts from which he would haul the logs, telling him to follow the company trucks and to let those trucks load first. Muller told him that every day he wanted to work he should go out and bring the logs to the mill and that as long as the company trucks worked he could work with them. There were some days he did not work, Muller telling him when not to work. At first he was hauling with the drivers of the company's trucks. Later, when he was getting into the woods before them, Muller stopped him, telling him to let the company trucks go in and load first. After working that way for several days he told Muller that he could not make as many loads as he wanted to make and Muller directed him to another tract, telling him he would have another pair of mules there to load his truck. Muller instructed him as to the place and manner of unloading the logs when he brought them in, telling him not to unload them in the yard unless he gave him instructions to do so, but to come on the skidway and to wait if there happened to be a truck or two ahead of him. Sometimes when there were several trucks ahead of him Muller would direct him to a place in the yard to unload. Frequently Muller gave him orders to bring in certain lengths of timber. Muller instructed him to "boom" his loads down securely. At first he used two boom chains, but Muller stopped him one day and told him to buy another chain and to boom with three chains. He was told by Muller, when the woods were boggy, to load half of a load of logs and carry them to the hard surface and unload them, then to "double back" into the woods and get another half load and have the teams follow to the place where the first half had been unloaded so that it would be loaded again. Muller told him to help repair the roads in the woods and whenever there were two or three trucks in the woods at once that all should help load them, to get them out as fast as possible. Sometimes, under Muller's direction, instead of hauling logs from the woods to the mill, he picked up logs from the yard and brought them to the skidway. For this work he was paid by the 1000 feet, and he was told when engaged in such work to begin with the whistle and to quit with the whistle. Muller gave him directions as to what roads to use between Willis and the

woods and told him to get into the mill with a maximum load as quickly as possible, but to try to stay within the speed limit, to drive carefully and not to pick up hitch-hikers. Samanie was paid by check every 15 days. The men who worked in the mill were paid by check at the same time and place. Over plaintiff in error's objections Samanie was permitted to testify that Muller directed the manner in which he performed his work and that he submitted himself entirely to Muller's supervision.

Samanie's testimony as to direction and control over him in the performance of his work was in many particulars contradicted by the testimony of Muller, but was corroborated by the testimony of another truck owner and driver who worked for the company at the same time.

Plaintiff in error insists that the evidence tending to show control is in substance no different from the evidence in Lehr, Inc. v. Brown, 127 Texas 236, 91 S. W. (2d) 693, and in Smith Bros., Inc. v. O'Bryan, 127 Texas 439, 94 S. W. (2d) 145, and that this case should be governed by those decisions. It is our opinion, however, after carefully reading the statement of facts, that the testimony, the substance of which has been stated, evidences authoritative control actually exercised, extending, beyond that proven in the Lehr case and the Smith Brothers case, in the direction of the manner, means and details of the work; and that from such testimony it may reasonably be inferred that Samanie was not independent, but subject to the control of his employer.

4  We believe the case is ruled by Texas Employers' Ins. Ass'n. v. Owen, (Com. App.) 298 S. W. 542. That case, like the instant case, and unlike the Lehr case and the Smith Bros. case, arose under the Workmen's Compensation Law. It is appropriate to observe here that Samanie was, within the literal terms of the statutory definition, "in the service" of J. S. Hunt Lumber Company, Inc., under a "contract of hire." Section 1, Article 8309, Revised Civil Statutes of 1925; Maryland Casualty Co. v. Kent (Com. App.) 3 S. W. (2d) 414. The facts in the Owen case (supra), which are set out in 291 S. W. 940, are very similar to the facts in this case. It was there held that the question whether the deceased was an employee was one of fact to be submitted to the jury. Since there was evidence tending to prove that Samanie was an employee rather than an independent contractor, the trial court did not

err in refusing plaintiff in error's request for peremptory instruction.

5 The assignments of error on which the writ was granted, and which we have concluded must be sustained, complain of the conditional submission by the trial court of issues as to temporary incapacity and partial incapacity. Defendant in error alleged that he was totally and permanently disabled and did not allege in the alternative either partial or temporary incapacity. Plaintiff in error's answer is a general denial. The issues of temporary and partial incapacity were raised by the testimony of an expert witness offered by plaintiff in error.

After issues relating to employment, injury and total incapacity, special issue No. 7 was submitted as follows:

"Do you find from a preponderance of the evidence that such total incapacity to labor, if any, of the plaintiff, I. O. Samanie, is permanent? Answer 'Yes' or 'No'."

By special issue No. 8 the jury was asked whether it found that the total incapacity was not only temporary and by special issue No. 9 whether the plaintiff had not and would not sustain only a partial incapacity. The 10th special issue is:

"To what date do you find from a preponderance of the evidence such total incapacity to labor, if any, of the plaintiff, I. O. Samanie, did exist or will exist? Answer by giving date."

The issue is immediately preceded by the instruction: "If you have answered special issue No. 7 'No,' then, and only in that event, answer special issue No. 10."

Special issue Nos. 11 and 12 and the instructions preceding them are as follows:

"If you have answered Special Issue No. 10, then answer Special Issue No. 11, but if you have left the answer to that issue blank, do not answer Special Issue No. 11.

### "SPECIAL ISSUE NO 11.

"Do you find from a preponderance of the evidence that the incapacity to labor, if any, of the plaintiff, I. O. Samanie, sustained as a result of said fall, if any, from its beginning to the date stated by you in answer to Special Issue No. 10, has not been and will not be only a partial incapacity?

"If you have answered Special Issue No. 7 'Yes,' then do not

answer Special Issue No. 12, but otherwise you will answer Special Issue 12.

### "SPECIAL ISSUE NO. 12.

"Do you find from a preponderance of the evidence that the plaintiff, I. O. Samanie, has sustained or will sustain a partial incapacity to labor as natural result of the injury, if any, sustained by him on March 14, 1938, as a result of said fall?"

Issues 10, 11 and 12 were not answered by the jury. The objection that the making of answers to these issues should not have been conditioned on the answer made to issue No. 7 is well taken. It is settled by the decisions that when the evidence in a Workmen's Compensation case raises the issue of a partial or temporary incapacity as a defense to the plaintiff's assertion of total permanent incapacity, the defendant is entitled to have such issue submitted to the jury "independent and irrespective of whatever answer the jury might give" to the issues as to total and permanent incapacity. Texas Indemnity Insurance Co. v. Thibodeaux, 129 Texas 655, 106 S. W. (2d) 268; Wright v. Traders & General Ins. Co., 132 Texas 172, 123 S. W. (2d) 314; The Southern Underwriters v. Wheeler, 132 Texas 350, 123 S. W. (2d) 340; Republic Underwriters v. Lewis, 106 S. W. (2d) 1113.

The ruling made in the Thibodeaux case (supra) is approved and thus stated in the Wright case (supra):

"It holds that in a compensation suit wherein the pleadings and evidence raise the issues of both total and partial incapacity, defendant has a right to the direct submission unconditionally of partial incapacity; and further that submission of such issue conditionally constitutes reversible error."

6 Defendant in error makes the contention that plaintiff in error was not prejudiced by the conditional submission of issues Nos. 10, 11 and 12 because issues Nos. 8 and 9 covered the defensive theories of temporary and partial incapacity and the jury found in answering those issues that the defendant in error's incapacity was not only temporary and was not and would not be only partial. The trial court, in accordance with expressions contained in earlier decisions but contrary to the method approved in Wright v. Traders & General Insurance Co. (supra), seems to have submitted issues as to partial and

temporary incapacity both in affirmative and in negative form but all of such issues were conditionally submitted. Two of them, issues Nos. 8 and 9, were conditional on an affirmative answer to issue No. 7 as to total permanent incapacity, while issues 10, 11 and 12, as above shown, were conditioned on a negative answer to issue No. 7. Nowhere in the charge was either an issue as to partial incapacity or an issue as to temporary incapacity submitted without condition. The court's error in submitting the issues conditionally over plaintiff in error's objections was not cured by the jury's answers to issues Nos. 8 and 9.

7 The Court of Civil Appeals held that the trial court did not err in excluding a certified copy of a judgment of the district court of Dallas County rendered April 12, 1937, whereby defendant in error recovered judgment against The Travelers Insurance Company for $2250.00 in a suit filed on a claim for compensation on account of alleged total and permanent incapacity caused by an injury suffered on April 1, 1936, because defendant in error on cross examination admitted the facts recited in the judgment. We need not determine whether because of that ruling alone the judgment of the district court should be reversed, but it is our opinion that, in view of the peculiar facts of this case and particularly the short time that elapsed between the occurrence of the injury for which that judgment was rendered and the occurrence of the injury on account of which this suit was brought, plaintiff in error is entitled to the benefit of the formal proof afforded by the judgment with its recitals of the findings made by the court and of the fact of payment, and that on another trial the certified copy of the judgment should be admitted in evidence.

The assignment that the judgment of the trial court for compensation at the rate of $20.00 per week is excessive presents a question of fact, not within the jurisdiction of this court.

The judgments of the Court of Civil Appeals and the district court are reversed and the cause is remanded to the district court.

Opinion adopted by the Supreme Court July 9, 1941.

Rehearing overruled November 5, 1941.