## TEXAS EMPLOYERS' INS. ASS'N

v.

## STONE.

No. 3058.

Court of Civil Appeals of Texas.

Eastland.

March 26, 1954.

Rehearing Denied April 16, 1954.

John P. Camp, McMahon, Springer, Smart & Walter, Abilene, for appellant.

Jones, Jones & Brian, Marshall, for appellee.

GRISSOM, Chief Justice.

Claimant, Everett C. Stone, an employee of Baker & Taylor Drilling Company, sued Texas Employers' Insurance Association to recover workmen's compensation for injuries sustained in the course of his employment. The Methodist Hospital of Dallas and Drs. Nash and Patterson intervened and sought recovery against defendant for hospital, medical and surgical services rendered plaintiff in connection with said injuries and an operation ordered by the Board. Based on jury findings, the court rendered judgment for total and permanent disability, less a credit of seventy weeks at $25 per week which had been paid plaintiff. The court also rendered judgment for intervenors. The insurer has appealed.

Claimant was a member of a crew employed by Baker & Taylor Drilling Com-

pany to drill a well in Scurry County. He was handling tongs which hung from a line in the derrick when the machinery started causing the tongs to strike plaintiff and knock him backward six or eight feet. It is undisputed that claimant sustained a serious injury to his back. Plaintiff was carried to a hospital in Colorado City where he stayed for 27 days. He then went to his home in Douglasville, Texas, where he was under the treatment of a local doctor. He then went to specialists in Shreveport and Dallas and, from the tests made by them, it was determined it was necessary to remove the disc and have a fusion of the spine. Claimant made written demand to the Board for such an operation. The Board ordered the operation performed. Thereafter, Drs. Patterson and Loiselle performed said operation. The Board, in ordering the operation, acted under the authority of Vernon's Ann.Civ.St. Article 8306, Section 12e. Said section provides that "In all cases where liability for compensation exists for an injury * * * and a surgical operation for such injury will effect a cure of the employé, or will materially and beneficially improve his condition" either side may demand an operation. It further provides: "The results of such operation * * * and the benefits and liabilities arising therefrom shall attach, be treated, handled and determined by the board in the same way as is provided in the case of hernia in this law."

■ The jury found the operation was a success. The insurer contends the court erred in rendering judgment for total permanent incapacity because of that finding and that claimant's recovery was thereby limited to twenty-six weeks. A successful operation under the hernia statute is one that effects a cure of the hernia. The operation performed on plaintiff did not effect a cure. The removal of the disc and fusion of the vertebrae, if successful, would leave claimant with a stiff back. There was no evidence which would support a conclusion that the operation would effect a cure. On the contrary, it was, in effect, admitted that claimant was totally disabled at the time of the trial. This was not a specific injury but a general injury. Regardless of whether the hernia statute is applicable, under the undisputed evidence, claimant was entitled to recover because of a general injury for total disability to the time of the trial. Point one is overruled. Texas Employers' Ins. Ass'n v. Williams, Tex.Civ. App., 205 S.W.2d 132, 136 (R.N.R.E.); Southern Casualty Co. v. Fulkerson, Tex. Com.App., 45 S.W.2d 152, 155; Royal Indemnity Co. v. Jones, Tex.Civ.App., 201 S.W.2d 129, 132; Texas Employers' Ins. Ass'n v. Tanner, Tex.Civ.App., 218 S.W.2d 277, 281 (R.N.R.E.); Consolidated Underwriters v. Langley, 141 Tex. 78, 170 S.W. 2d 463; Consolidated Underwriters v. Lowrie, Tex.Civ.App., 128 S.W.2d 421, 423 (W.R.).

Appellant's second and third points are that the court erred in submitting the issue of partial incapacity conditionally and in refusing to submit its requested issue on partial incapacity. Issue One was: "Do you find from a preponderance of the evidence the total incapacity of Everett C. Stone will be permanent or temporary?" Total incapacity was then defined and the jury was told that an employee is not entitled to recover for total incapacity merely because he is unable to procure and retain employment in his usual occupation. The jury was informed that partial incapacity meant that the physical condition of an injured employee was such that he was able to both procure and perform work at some occupation suitable to his existing condition but less remunerative, or requiring less physical strength, than the work he was engaged in at the time of his injury. The issues following issue one above and the answers considered pertinent to said points are as follows:

"Answer 'Permanent' or 'Temporary.' Answer: Permanent.

"If you have answered the foregoing question 'Temporary' then answer the following question otherwise do not answer the same.

"Special Issue No. 2.

"How many weeks do you find from a preponderance of the evidence such

total incapacity will last. Answer in number of weeks. Answer ——— weeks. If you have answered Special Issue No. 2 by giving any number of weeks, answer the following question: otherwise, do not answer the same.

"Special Issue No. 3

"Do you find from a preponderance of the evidence that plaintiff will suffer any partial incapacity, following the end of the number of weeks found by you in answer to Special Issue No. 2? Answer 'Yes' or 'No.' Answer: ———. If you have answered the foregoing Special Issue No. 3 'Yes' then answer the following question, otherwise do not answer the same.

"Special Issue No. 4

"Do you find from a preponderance of the evidence that such partial incapacity, if any, so found by you in answer to Special Issue No. 3 will be 'Permanent' or 'Temporary'? Answer: 'Permanent' or 'Temporary.' Answer: ———. If you have answered the foregoing Special Issue No. 4 'Temporary' then you will answer the following question, otherwise, do not answer the same.

"Special Issue No. 5

"For how many weeks, do you find from a preponderance of the evidence, such partial incapacity has lasted or will last? Answer in number of weeks. Answer: ——— weeks. If you have answered Special Issue No. 3 'Yes' then answer the following question, otherwise do not answer the same.

"Special Issue No. 6

"From a preponderance of the evidence, find and state the percentage of such partial incapacity. Answer in percentage. Answer: ——— Per Cent."

Defendant objected to the conditional submission of the issue of partial incapacity, stating that defendant had pleaded partial incapacity as an affirmative defense and was entitled to an unqualified, unconditional submission of that issue. In addition, it tendered and requested submission of the following issue: "Do you find from a preponderance of the evidence that the plaintiff will not suffer any partial incapacity?"

Claimant contends the issue of partial incapacity was not raised by the evidence. The trial began March 16, 1953. Claimant was injured on March 25, 1951. Issue One assumed that at the time of the trial Stone was totally incapacitated. The insurer did not object to such assumption and the evidence shows it was correct. In this connection, see Texas Employers' Ins. Ass'n v. Patterson, 144 Tex. 573, 192 S.W.2d 255, 257. On July 8, 1952, Mr. Stone was operated at the Methodist Hospital and a ruptured disc was removed from between two vertebrae and a spinal fusion was performed. The removal of the disc was done by Dr. Patterson, a neuro-surgeon, assisted by Loiselle, an orthopedic surgeon, and others, and Dr. Loiselle then performed the fusion operation assisted by Patterson and others. Patterson is a specialist in brain and nerve surgery and Loiselle is a specialist in bone surgery. On January 8, 1953, Dr. Patterson's depositions were taken. He testified that Stone had not then recovered from his injury; that it would require a minimum of twelve months after the operation to determine "how much and when he will recover"; that when Stone was last examined, on January 7, 1953, he was of the opinion Stone was still totally disabled; that when he last examined Stone, approximately six months after the operation, "he was definitely improved, in fact, he made the statement that for the first time since injury he could now tie his own shoes. Q. You did note an improvement, seeing him in January (1953) from his previous post-operative checkup—is that correct? A. Yes, sir. Q. And the patient showed to you that he was getting some better? A. That is correct."

He further testified that Stone was severely ill after the operation because he developed a secondary infection, or moniliasis, following surgery and that this had kept him from recovering as rapidly as he nor-

mally would; that this infection cleared up in about three weeks; that he was of the opinion the fusion was developing normally; that, in his opinion, it would take at least twelve months after the operation "before one can tell how much or when he will be able to return to work"; that there was nothing to indicate the bones were not fusing, except that it had not had enough time to fuse properly; that on January 7, 1953, Stone was not able to go back to work.

Mr. Gage testified that Stone drives his automobile some and has walked from his car to Gage's store without a cane.

Dr. Loiselle testified that Mr. Stone was kept in the hospital about three weeks after the operation, which was the usual period; that he had seen Stone on several occasions; that he was X-rayed in October, 1952, November, 1952 and January, 1953; that the last X-ray was made for the purpose of determining whether or not the fusion had been accomplished. "From these X-rays, it appears that the bony fusion is progressing very satisfactorily and should give a solid fusion." He testified that on the three occasions when he made the X-ray picture he also gave Mr. Stone a physical examination to determine the manner in which he was recovering. He testified that, according to Stone's complaints, he had improved between each of said examinations. He further testified:

"Q. Doctor, I believe January 7th would be just about six months— January 7th, 1953, would be about six months from the time you performed the operation—is that correct? A. Yes, sir.

"Q. Now, Doctor, this is a compensation case—an industrial accident case in a compensation law suit—in your opinion Doctor, about how long from the date of the operation would this man be, in your opinion, totally disabled? A. (Pause) Total disability of this type of case, in my opinion, usually lasts for six months with partial disability for an additional six

months. If the patient is a worker other than a desk clerk, I do not believe he can do his duties under a year. In this particular individual, this might be extended three months.

"Q. In your opinion, Doctor, he would not be able to do manual labor for fifteen (15) months—is that correct? A. To the best of my knowledge, it is.

"Q. And would the fifteen months period of total disability be followed by any partial disability, Doctor? A. Yes, sir; it is my opinion he will have ten (10) to fifteen (15) percent permanent partial disability.

"Q. After the end of the fifteen months period—is that right, Doctor? A. Yes, sir.

\* \* \* \* \* \*

" \* \* \* Doctor, when you were giving your opinion of disability there, you of course, had taken a history of this man and found out, did you not, that he was an oil field worker? A. Yes, sir, I did.

"Q. And in giving your opinion as to his disability, you were taking into consideration that he did perform manual labor—is that right? A. Yes, sir.

"Q. And the kind of labor that is customarily performed in the oil field? A. Yes, sir; I did."

██ We are of the opinion, from the evidence stated and quoted, that reasonable minds could draw different inferences or conclusions as to whether Stone would suffer any partial incapacity within 401 weeks after his injury. See Commercial Standard Ins. Co. v. Davis, 134 Tex. 487, 137 S.W.2d 1, 2.

██ The insurer objected to the court's charge because partial incapacity was conditionally submitted. It is established that the conditions existing when the charge is given, not after the verdict, determine whether there was error in condition-

ally submitting an issue. It has also been determined that the fact that the jury found Stone was totally and permanently incapacitated does not affect the right of the insurer to have the issue of partial incapacity unconditionally submitted. Several conditions and qualifications were placed on the right of the insurer to have the issue of partial incapacity answered. It was pleaded and raised by the evidence and it should have been submitted and answered regardless of how the jury might answer other issues and regardless of whether such answers might conflict. The insurer specifically pleaded that if the claimant were incapacitated, his incapacity was partial, not total. It was reversible error to submit partial incapacity conditionally. Federal Underwriters Exchange v. Lynch, 140 Tex. 516, 168 S.W.2d 653, 654; Southern Underwriters v. Samanie, 137 Tex. 531, 155 S.W.2d 359, 364; Texas Employers' Ins. Ass'n v. Patterson, 144 Tex. 573, 192 S.W. 2d 255, 257; Schuhmacher Co. v. Holcomb, 142 Tex. 332, 177 S.W.2d 951, 953; Traders & General Ins. Co. v. Shanks, Tex.Civ.App., 83 S.W.2d 781 (Writ Ref.); Montgomery v. Gay, Tex.Civ.App., 212 S.W.2d 941; 41 Tex.Jur. 1117, 1118.

█. The insurer contends the court erred in rendering judgment for medical expenses incurred in connection with the operation because claimant is not entitled to recover both total and permanent incapacity and such medical expenses, and that the court erred in rendering judgment for intervenors, Drs. Nash and Patterson, because neither was certified by the Board to perform the operation.

Under Section 12e, Article 8306, the insurance company is required to pay for all necessary surgical treatment and hospital services incident to an operation ordered by the Board. Claimant applied to the Board for the operation. The Board, after notice to all parties, ordered the operation and designated Dr. Girard as the one to perform it. Claimant went to his office, where he was examined and claimant was advised that he was in condition to stand the operation. He was ordered by Girard to go to the Methodist Hospital where he would be operated the next morning. Girard was present the next morning when claimant was anesthetized for the operation. It is clear that Patterson and Nash assisted in the operation. It is undisputed that such operations usually require the presence of both a neurosurgeon, which Patterson is, and an orthopedic surgeon, which Loiselle is, and that they have assistants and that it is customary for the partners to act for each other. The statute requires the insurer to pay the expenses incident to the operation. The services of Patterson and Nash and the Methodist Hospital were incident to the operation. The court did not err in rendering judgment therefor.

The judgment is reversed and the cause remanded.

LONG, J., dissenting.

LONG, Justice (dissenting).

I cannot agree to a reversal of this judgment. The affirmative defense of appellant was submitted to the jury precisely as proved. The court is required to submit only such issues as are raised by the pleadings and evidence. Appellant plead that appellee's incapacity was temporary rather than permanent and partial rather than total. However, the proof offered by appellant was to the effect that appellee's incapacity was total but that such incapacity was temporary and that at the end of such total temporary incapacity, his incapacity would be partial. The court submitted this theory to the jury. The jury was asked first if appellee's total incapacity was temporary. Then, whether such total incapacity would be followed by partial incapacity and the duration thereof.

Appellant never contended in the trial court that appellee would ever suffer any partial incapacity until the end of his temporary total incapacity. The court submitted the defensive theory of appellant fairly and just exactly as it was proved. The issue of partial incapacity was not conditioned upon a finding to appellee's issue that his injuries were not permanent but was conditioned upon a finding to appellant's issue

that plaintiff's incapacity was temporary. The court submitted component parts of appellant's defenses, that is to say, he submitted the issue of temporary total incapacity unconditionally and conditioned an answer to partial incapacity on a finding that total incapacity was temporary. This was a proper submission of appellant's defensive theory.

Appellant did not request a proper issue on partial incapacity. The issue requested was: "Do you find from a preponderance of the evidence that plaintiff will not suffer any partial incapacity?" The issue does not inquire whether appellee will not suffer partial incapacity at the end of his temporary total incapacity. As heretofore stated, appellant never contended that appellee would suffer partial incapacity prior to the end of his total temporary incapacity. It is undisputed that appellee was totally disabled at the time of the trial and had been at all times since his injury. Thus it will be seen that the issue requested is not raised by the evidence and an answer thereto could not have formed a basis of a judgment.

It is my opinion that this case should be in all things affirmed and I respectfully enter my dissent.